**Anna KARBOSKY, Michael Manyak, Jr., and Stephen G. Panson, Plaintiffs,**

**v.**

**BASF CORPORATION, a Michigan corporation, formerly known as BASF Wyandotte Corporation, and Wyandotte Chemicals Corporation, Defendant.**

**No. 89–70195.**

United States District Court, E.D. Michigan, S.D.

Feb. 28, 1991.

John A. Lygizos, John A. Lygizos, P.C., Detroit, Mich., for plaintiffs.

Robert A. Marsac, Karen E. Bridges, Wise & Marsac, Detroit, Mich., for defendant.

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S SEPTEMBER 20, 1990 MOTIONS FOR SUMMARY JUDGEMENT AS TO ANNA KARBOSKY, MICHAEL MANYAK, JR., AND STEPHEN G. PANSON

GADOLA, District Judge.

## FACTS

Plaintiff Karbosky began her employment as an hourly employee with defendant on July 18, 1944. She became a salaried employee on August 1, 1953. Karbosky took special retirement on April 1, 1988. Karbosky's retirement benefits were calculated pursuant to the terms and conditions contained in the Retirement Income Plan for Salaried Employees of BASF Wyandotte Corporation, effective July 1, 1987 (the "1987 Plan").

Plaintiff Manyak began his employment with defendant on February 20, 1950. He took special retirement on August 31, 1985. Manyak's retirement benefits were calculated pursuant to the terms and conditions contained in the Retirement Income Plan for Salaried Employees of BASF Wyandotte Corporation, effective July 1, 1984 (the "1984 Plan").

Plaintiff Panson began his employment with defendant on July 31, 1950. He took special retirement on December 31, 1986. Panson's retirement benefits were calculated pursuant to the terms and conditions contained in the Retirement Income Plan for Salaried Employees of BASF Wyandotte Corporation, effective July 1, 1986 (the "1984 Plan").

The claims of the three plaintiffs are virtually identical; therefore, for the remainder of this opinion they will be dealt with as a group. The only difference in the plaintiffs' claims is that plaintiff Karbosky claims that the defendant misrepresented to her, prior to her retirement, the amount of her retirement benefit. However, in its motion for summary judgment, defendant asserted, and plaintiff did not refute, that "the benefits counselor who prepared this draft [the Pension Estimate Sheet with the mistake] mistakenly calculated Karbosky's salaried employment date as July 18, 1944, rather than August 1, 1953." Defendant's brief at p. 7.

Defendant has maintained retirement benefit plans for its salaried employees since 1950. On January 1, 1950 defendant adopted the Basic Retirement Income Plan for Salaried Employees (the "Basic Plan"). All contributions to the Basic Plan were made by the defendant on a percentage of the participant's earnings. Effective June 1, 1950 the defendant adopted the supplemental Retirement Income Plan for Salaried Employees (the "Supplemental Plan"). Contributions to the Supplemental Plan were made by the employee.

In 1961, the Basic Plan and the Supplemental Plan were merged and became known collectively as the Retirement Income Plan for Salaried Employees ("The Plan"). Eligible salaried employees were still given the option to make contributions to The Plan to enhance their ultimate retirement benefits. On May 1, 1965 the contributory feature of The Plan was eliminated. Although employee contributions were no longer permitted, credit was given for contributions previously made. If an employee chose to withdraw his contributions, his retirement benefit would be calculated as if such contributions had never been made. Following enactment of ERISA (January 1, 1975), the defendant made substantial changes to The Plan to comply with the comprehensive legislative and administrative requirements of ERISA, the IRS and the Social Security Administra-

tion. The Plans in effect at the time plaintiffs retired were the 1984 and 1987 Plans. The 1984 and 1987 Plans were employer-sponsored benefit programs governed by ERISA and formally adopted pursuant to a resolution of the Board of Directors.

The monthly retirement benefit of plaintiffs under the 1984 and 1987 Plans were determined on the basis of two formulas (Formula I and Formula II). The formulas were designed to take into account all of an employee's years of service as well as any contributions made to the Supplemental Plan. The 1984 and 1987 Plans required that calculations be made under both formulas and that the formula yielding the higher benefit be used in determining an employee's monthly retirement benefit. In simple terms, Formula I does not include, in an employee's credited service, years in which an employee could have contributed to the Supplemental Plan but did not. On the other hand, Formula II utilized all of an employee's years of service in determining the monthly retirement benefit.

Coincident with the 1950 adoption of the Basic Plan and the Supplemental Plan, the defendant prepared Summary Plan Descriptions ("SPD's") for its salaried employees. The SPD's explain the nature and substance of The Plans in clear, simple terms, including eligibility requirements, available benefits, how benefits are calculated, the effect of contributions to the Supplemental Plan, and the effect of contribution withdrawals. Any changes in benefit calculations or formulas were explained in the SPD's. The SPD's were made available to all salaried employees prior to the enactment of ERISA. After the enactment of ERISA, copies of all SPD's were distributed to every eligible participant. Plaintiff acknowledges that he received SPD's from the defendant beginning in about 1974. (Sutter Dep., pp. 42–53).

Plaintiffs failed to contribute to the Supplemental Plan. As a result of their failure to contribute to the Supplemental Plan, plaintiffs' retirement benefits were calculated to reflect such failure to contribute to the Supplemental Plan. Plaintiffs' retirement benefit were calculated under both Formula I and II. The benefit calculation under Formula II yielded a higher sum than under Formula I. Despite the fact that plaintiffs had failed to contribute to the Supplemental Retirement Plan, the benefit calculations under Formula I yielded a higher sum than under Formula II.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties. [Citation omitted]. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th Ed.1979)). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 861 (6th Cir. 1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact: rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91

L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249–50, 106 S.Ct. at 2511. (Citations omitted); *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

## ANALYSIS

Discovery is complete and the matter is before the court on defendant's motions for summary judgment. Plaintiffs argue that under the Plans they were not given credit for all of their years of service. Plaintiffs also argue that defendant abused its impact of contributing or not contributing to the Supplemental Plan. Finally, plaintiffs argue that defendant abused its discretion by failing to amend the Plan in 1984. In its motions for summary judgment, defendant argues that these claims are without merit and subject to summary disposition. The court finds that as a matter of law plaintiffs have failed to state a claim. Accord-ingly, the court will grant defendant's motions for summary judgment.

### A. Years of Service

■ The essence of plaintiffs' argument is that defendant breached its contractual obligations under the Plans by failing to give them credit for all of their years of service. Plaintiffs contend that they were "penalized" for failing to contribute to the Supplemental Plan by a loss in service credit. However, this contention demonstrates a misunderstanding of the operation of the Plans and the actuarial basis for the benefit calculations.

Every variation of the Retirement Plan, before and after the merger of the Supplemental Plan in 1961, has contained at least one formula which utilized all of an employee's years of service in calculating his or her retirement benefit. Since the merger of the Plans in 1961, the retirement benefit of an employee has been calculated on the basis of two formulas. The formulas were designed to take into account many factors including all of an employee's years of service as well as any contributions made to the Supplemental Plan. The Plans have always required that calculations be performed under both formulas and that the formula yielding the highest benefit be used in determining an employee's monthly retirement benefit.

There is no dispute that the 1984 and 1987 Plans contained two formulas, one of which utilize all years of service, the other of which did not. There is also no dispute that defendant utilized the formula that gave plaintiffs the higher monthly benefit. Finally, there is no dispute that the plaintiffs have received all retirement benefits to which they are entitled under the 1984 and 1987 Plans. Apparently, plaintiffs seek to rewrite the Plans because they are unhappy with the amount of their retirement benefit. This result plaintiffs clearly are not entitled to accomplish. Thus, the court finds that plaintiffs' claim that they were not given credit for all their years of service is without basis in fact.

### B. Abuse of Discretion

#### 1. *Failure to Disclose with Respect to Supplemental Plan*

■ Plaintiffs' argument is that the defendant breached its fiduciary duties by not providing adequate information about enrollment in the Supplemental Plan and the impact of not contributing to the Supplemental Plan. However, it is uncontroverted that the defendant routinely prepared a Summary Plan Description ("SPD") every time the Plan was amended or revised. The SPD's explained the nature of the Plans including the effect of contributions to the Supplemental Plan in clear, simple terms. Many of the SPD's provided illustrative examples of calculations of retirement benefits based on contribution or noncontribution to the Supplemental Plan.

Prior to the enactment of ERISA (January 1, 1975), disclosure requirements were mandated by the Welfare and Pension Plans Disclosure Act ("WPPDA"), 29 U.S.C. §§ 301–309. Courts have noted that the WPPDA had much more lenient disclosure requirements than those provided by ERISA. *See, e.g., Kolentus v. Avco Corp.,* 798 F.2d 949, 960 (7th Cir.1986). Under the WPPDA an employer merely had to keep copies of the Plan and amendments at its principal office for public examination. 29 U.S.C. § 307(a)(1) (1970). Furthermore, the plan administrator was only required to furnish copies of the description of the Plan upon written request. 29 U.S.C. 308(b) (1970). Thus, under the WPPDA, the Plan administrator was not required to distribute SPD's to the participants or even explain the Plan's terms and conditions.

In the case *sub judice,* plaintiffs seek to apply ERISA disclosure requirements to Pre–ERISA conduct. However, it is uncontroverted that the defendant was in compliance with Pre–ERISA disclosure requirements. Prior to 1975, the SPD's were made available to all salaried employees. Moreover, there is no dispute that after the enactment of ERISA, effective January 1, 1975, the defendant distributed copies of all SPD's to every eligible participant. These post-ERISA SPD's clearly articulate the nature of the Plans, eligibility requirements and the effect of contributions to the Supplemental Plans. The distribution of these SPD's satisfied the defendant's obligation under ERISA to furnish plan participants information in a manner calculated to be understood by the average plan participant. 29 U.S.C. § 1022(a): *see, also, Morse v. Stanley,* 732 F.2d 1139, 1147 (2nd Cir.1984). Plaintiffs have produced no evidence that the defendant breached any fiduciary duty with respect to its disclosure of relevant Plan information under ERISA.

#### 2. *Failure to Disclose with Respect to Confidential Memorandum*

■ In the early 1980's defendant received numerous complaints from employees regarding the calculation of retirement benefits. Apparently, the complaining employees perceived that they were being penalized for withdrawing from, or for not contributing to, the Supplemental Plans. In 1984, the defendant caused an extensive study to be done to examine the feasibility of amending the plan to allow retroactive changes. After months of study, the defendant concluded that changes in the Plan would result in enormous administrative complexity, require complex amendments that would require IRS approval, result in substantial consulting costs and require substantial cash contributions to the Plan. A Confidential Memorandum was generated recommending that the Plan not be amended. Plaintiffs argue that the decision not to disseminate the Confidential Memorandum was inappropriate and a "misrepresentation of silence." Plaintiffs' brief at p. 14.

There is no basis in law for plaintiffs' contention that defendant breached its fiduciary duty by not disclosing the Confidential Memorandum. With respect to proposed amendments or revisions to the plan that are considered but not adopted, the law is clear: defendant has no duty "to say anything at all or to communicate with potential plan participants about the future availability of [proposed amendments or revisions]." *Berlin v. Michigan Bell Telephone Co.,* 858 F.2d 1154, 1164 (6th Cir. 1988).

### 3. Failure to Amend the Plan

█ Finally, the Court interprets plaintiffs' complaint and their responses to defendants' motions for summary judgment as raising an issue with respect to defendant's decision in 1984 not to amend the Plan. Essentially, plaintiffs contend that the defendant's decision not to amend the Plan following the exhaustive study in 1984 constituted an abuse of discretion. Plaintiffs do not dispute the fact that the defendant's decision not to amend the Plan was a "business decision." *Berlin*, 858 F.2d at 1162–64. Moreover, plaintiff could not credibly contend, nor does he, that the decision was arbitrary or capricious. The Sixth Circuit discussed, in *Berlin*, 858 F.2d at 1163, a business decision by a plan administrator not to amend or revise a plan:

> Under ERISA, purely business decisions by an ERISA employer are not governed by section 1104's fiduciary standards. See *Hickman v. Tosco Corp.*, 840 F.2d 564, 566 (8th Cir.1988) (" 'ERISA ... envisions that employers will act in a dual capacity as both fiduciary to the plan and as employer. ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets.' ") (quoting *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir. 1986)); *Trenton v. Scott Paper Co.*, 832 F.2d 806, 809 (3d Cir.1987), cert. denied, [485 U.S. 1022] 108 S.Ct. 1576 [99 L.Ed.2d 891] (1988); *Amato v. Western Union Int'l*, 773 F.2d 1402, 1416–17 (2d Cir.1985) (ERISA employers may wear two hats and assume fiduciary status only when functioning in their capacity as plan administrators, not when conducting business), cert. dismissed, 474 U.S. 1113 (1986); *Sutton v. Weirton Steel Div. of Nat'l Steel Corp.*, 567 F.Supp. 1184 (N.D.W.Va.), aff'd, 724 F.2d 406 (4th Cir.1983), cert. denied, 467 U.S. 1205 [104 S.Ct. 2387, 81 L.Ed.2d 345] (1984) (same). See also Shawe & Swerdlin, You Promised!—May an Employer Cancel or Modify Employee Severance Pay Arrangements?, 44 Md.L.Rev. 903 (1985) (discussing *Sutton*, supra).

Under the exclusion from fiduciary standards for business decisions, corporate actions by plan administrators seeking to reduce the amount of unaccrued plan benefits, *West v. Greyhound Corp.*, 813 F.2d 951, 955–56 [*27] (9th Cir.1987), terminating a pension plan, *Cunha v. Ward Foods, Inc.*, 804 F.2d 1418, 1432 (9th Cir.1986), and deciding whether or not to establish a plan, *Moore v. Reynolds Metals Co.*, 740 F.2d 454, 456 (6th Cir.1984), cert. denied, 469 U.S. 1109 [105 S.Ct. 786, 83 L.Ed.2d 780] (1985), have all been found nonfiduciary.

The Sixth Circuit in *Moore v. Reynolds Metals Co. Retirement Program*, 740 F.2d 454, 456 (6th Cir.1984) held that courts may not review business decisions made by plan administrators:

> We note initially that an employer has no affirmative duty to provide employees with a pension plan. H.Rep. No. 93–807, 93rd Cong., 2d Sess. (1974), reprinted in [1974] U.S.Code Cong. and Ad.News, 4670, 4677. In enacting ERISA, Congress continued its reliance on voluntary action by employers by granting substantial tax advantages for the creation of qualified retirement programs. *Id.* Neither Congress nor the courts are involved in either the decision to establish a plan or in the decision concerning which benefits a plan should provide. In particular, courts have no authority to decide which benefits employers must confer upon their employees; these are decisions which are more appropriately influenced by forces in the marketplace and, when appropriate, by federal legislation. *Absent a violation of federal or state law, a federal court may not modify a substantive provision of a pension plan.*[3] *United Mine Workers of America Health and Retirement Funds v. Robinson*, 455 U.S. 562 [102 S.Ct. 1226, 71 L.Ed.2d 419] (1982).

> Moore argues that Robinson does not apply because the plan in that case was established pursuant to a collective bargaining agreement whereas the plan involved in this case was created unilaterally by the employer. (footnote omitted).

We find the logic of Robinson persuasive in either context:

"[B]ecause finite contributions must be allocated among potential beneficiaries, inevitably financial and actuarial considerations sometimes will provide the only justification for an eligibility condition that discriminates between different classes of potential applicants for benefits."

---

[3] The danger of judicial interference in the decision concerning which benefits to provide is exemplified by this case. Perhaps the decision to include the waiting period was made due to financial considerations. Clearly, a company such as Reynolds Aluminum is entitled to determine without judicial interference the amount of money it desires or can afford to appropriate for disability benefits. This is especially reasonable in light of the fact that Reynolds Aluminum Company provides all funding for the Retirement Program; participants make no contribution. Similarly, Reynolds Aluminum Company may have made the philosophical decision to confer benefits upon those who would be forced to bear the expense of a long term disability. This type of decision is also reasonable and within a company's prerogative. A company's reason for treating a class of beneficiaries differently is not always readily ascertainable. For this reason, a court should be hesitant to substitute its judgment for that of the company.

(Emphasis supplied). Defendant's decision not to amend or revise The Plan in 1984 was a business decision under *Berlin* and did not constitute a violation of any federal or state law. Accordingly, to the extent plaintiffs claim that defendant's decision not to amend was an abuse of discretion, plaintiff's claim is without merit.

## CONCLUSION

In essence, plaintiffs complain that they did not understand the ramifications of failing to contribute to the Supplemental Plan and that because the defendant allegedly failed to disclose those ramifications, the Plan should be rewritten to allow plaintiffs to retroactively contribute to the Supplemental Plan to enhance their monthly retirement benefit. It is clear, however, that defendant complied with all relevant disclosure requirements. Defendant's 1961 decision to merge the Plans and defendant's 1984 decision not to revise or amend the Plan were business decisions. According-

ly, this Court may not substitute its judgment for that of defendant to rewrite the Plan. Moreover, defendant was under no duty to disclose the 1984 Confidential Memorandum rejecting a proposed revision to the Plan. It is clear that there are no disputed facts on which plaintiffs may rely to state a valid claim against the defendant. Thus, defendant's motions for summary judgment will be granted.

## ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that defendant's September 20, 1990 motions for summary judgment as to plaintiffs Karbosy, Manyak and Panson are GRANTED.