June G. MOORE, Plaintiff-Appellee,

v.

REYNOLDS METALS COMPANY RETIREMENT PROGRAM FOR SALARIED EMPLOYEES, Defendant-Appellant.

No. 83-3458.

United States Court of Appeals, Sixth Circuit.

Argued June 5, 1984.

Decided Aug. 10, 1984.

Michael S. Glassman, argued, Dinsmore & Shohl, Cincinnati, Ohio, for defendant-appellant.

Richard D. Lameier, argued, Cincinnati, Ohio, for plaintiff-appellee.

Before ENGEL and KRUPANSKY, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

June G. Moore (plaintiff-appellee) brought this action under the Employee Retirement Income Security Act (ERISA) to recover survivor's disability benefits from the Reynolds Metals Company Retirement Program (defendant-appellant) (Retirement Program). Moore alleged that a provision in a defined benefit pension plan requiring a five month waiting period before a participant could be declared totally and permanently disabled and, thus, eligible for disability benefits, was arbitrary and capricious.[1] The district court agreed and granted summary judgment in favor of Moore. 563 F.Supp. 1372. Because federal courts do not have authority to review the provisions of such a plan, we reverse.

The facts are uncontested. Moore's husband, Mr. Donald Moore, was a salaried

employee of the Reynolds Aluminum Company for twenty-eight years and was a participant in the Retirement Program, a plan subject to ERISA. The Retirement Program, a plan which called for no employee contribution, was established unilaterally by Reynolds Aluminum Company. The Retirement Program's provisions specify the circumstances under which death benefits to the surviving spouse of a "totally and permanently disabled" individual may be awarded. Article VI, Section 6.3 of the Retirement Program provided in pertinent part at the time of Mr. Moore's death:

> If a disabled participant *to whom Section 5.2 applies* dies after completing at least ten (10) years of service but before electing to receive a retirement benefit *pursuant to Section 5.2*, his Surviving Spouse, if any, shall be entitled to receive a benefit hereunder. (emphasis added).

Section 5.2 applies only to a participant who is "totally and permanently disabled" as defined in Section 2.4 of the Retirement Program. Section 2.4 provides:

> *Total and Permanent Disability.* For the purposes of the Program, an Employee shall be deemed to be totally and permanently disabled as of the date he is considered *eligible for, and in receipt of,* benefits under the Disability Insurance provisions of the Social Security Act. (emphasis added).

In order to be eligible for benefits under the disability insurance provisions of the Social Security Act, the potential recipient must meet all of the requirements specified in 42 U.S.C. Sec. 423, which includes completion of a five-month waiting period. 42 U.S.C. Sec. 423(c)(2). Accordingly, a beneficiary of the Retirement Program becomes eligible for disability benefits only upon completing a five-month waiting period following commencement of the disability.

Mr. Moore became afflicted with cancer and was placed on sick leave status on May 15, 1981; he died on September 27, 1981. After her husband's death, Moore applied

---

1. Moore also alleged that she was entitled to benefits as the surviving spouse of a participant in the Retirement Program who died prior to his normal retirement date. This claim was dismissed and is not before the court on appeal.

for benefits as a surviving spouse of a totally and permanently disabled participant of the Retirement Program who had completed at least ten years of service with Reynolds Aluminum Company.[2] Because he did not complete the five-month waiting period, Mr. Moore was not "totally and permanently disabled" as defined by the Retirement Program and, therefore, his wife's application for survivor's disability benefits was denied.

June Moore was successful in persuading the district court to declare the five month waiting period arbitrary and capricious. The sole issue on appeal is whether a federal court may review for reasonableness the provisions of a retirement program established pursuant to the requirements of ERISA, even though the program was not established pursuant to a collective bargaining agreement.

 We note initially that an employer has no affirmative duty to provide employees with a pension plan. H.Rep. No. 93–807, 93rd Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. and Ad.News, 4670, 4677. In enacting ERISA, Congress continued its reliance on *voluntary* action by employers by granting substantial tax advantages for the creation of qualified retirement programs. *Id.* Neither Congress nor the courts are involved in either the decision to establish a plan or in the decision concerning which benefits a plan should provide. In particular, courts have no authority to decide which benefits employers must confer upon their employees; these are decisions which are more appropriately influenced by forces in the marketplace and, when appropriate, by federal legislation. Absent a violation of federal or state law, a federal court may not modify a substantive provision of a pension plan.[3] *United Mine Workers of America Health and Retirement Funds v. Robinson,* 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982).

 Moore argues that *Robinson* does not apply because the plan in that case was established pursuant to a collective bargaining agreement whereas the plan involved in this case was created unilaterally by the employer.[4] We find the logic of *Robinson* persuasive in either context:

---

**2.** Mr. Moore had applied for Social Security Disability Insurance, but as both parties acknowledge, he never received benefits, nor was he eligible for benefits, because he died before completing the statutory five-month waiting period.

**3.** The danger of judicial interference in the decision concerning which benefits to provide is exemplified by this case. Perhaps the decision to include the waiting period was made due to financial considerations. Clearly, a company such as Reynolds Aluminum is entitled to determine without judicial interference the amount of money it desires or can afford to appropriate for disability benefits. This is especially reasonable in light of the fact that Reynolds Aluminum Company provides all funding for the Retirement Program; participants make no contribution. Similarly, Reynolds Aluminum Company may have made the philosophical decision to confer benefits upon those who would be forced to bear the expense of a long term disability. This type of decision is also reasonable and within a company's prerogative. A company's reason for treating a class of beneficiaries differently is not always readily ascertainable. For this reason, a court should be hesitant to substitute its judgment for that of the company.

**4.** Moore argues that this court's decision in *Sellers v. O'Connell,* 701 F.2d 575 (6th Cir.1983), precludes application of *Robinson.* The pension fund in *Sellers* was established pursuant to a collective bargaining agreement. Subsequent to its creation, the fund's trustees passed a resolution which was not part of the collective bargaining pact and this court permitted review of the resolution to determine whether it was arbitrary or capricious. *Sellers* is distinguishable from the case at bar because it focused on the trustees' *application* of the fund's provisions. Clearly, a court may review the *administration* of a pension fund to determine whether the provisions are applied in an arbitrary or capricious manner. However, review of a plan's provisions for reasonableness is improper.

Similarly, Moore contends that the Ninth Circuit has been willing to review a denial of benefits for arbitrariness. *E.g., Harm v. Bay Area Pipe Trades Pension Plan Trust Fund,* 701 F.2d 1301 (9th Cir.1983); *Music v. Western Conference of Teamsters Pension Trust Fund,* 712 F.2d 413 (9th Cir.1983). This assertion is correct. The distinction that Moore has failed to appreciate is simply that, while courts may review the trustees' administration of a plan, courts may not modify the clear and plain language of the plan itself.

"[B]ecause finite contributions must be allocated among potential beneficiaries, inevitably financial and actuarial considerations sometimes will provide the only justification for an eligibility condition that discriminates between different classes of potential applicants for benefits."

*United Mine Workers of America Health and Retirement Funds v. Robinson,* 455 U.S. 562, 575, 102 S.Ct. 1226, 1234, 71 L.Ed.2d 419 (1982). Accordingly, an employer is free to choose which benefits to include in a retirement program so long as the stringent requirements of ERISA are met and no other law or policy is violated.

■ In contrast, once a plan is established and is governed by the requirements of ERISA, courts may review a decision by trustees to deny benefits. *Rhoton v. Central States, Southeast and Southwest Areas Pension Fund,* 717 F.2d 988 (6th Cir. 1983); *Van Gunten v. Central States, Southeast and Southwest Areas Pension Fund,* 672 F.2d 586 (6th Cir.1982). Such review, however, is limited to a determination of whether the trustees' actions in administering or interpreting a plan's provisions are arbitrary and capricious. Courts may review the trustees' administration of a pension plan because Congress has imposed a fiduciary duty upon trustees to administer such plans for the sole and exclusive benefit of the beneficiaries. 29 U.S.C. Sec. 1104. *See* H.Rep. No. 93–533, 93rd Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. and Ad.News, 4639, 4649. Courts, however, have not been authorized by Congress to impose upon employers the court's subjective beliefs concerning the relative value of benefits which employers have chosen voluntarily to confer upon employees.

■ In summary, judicial interference into the establishment of pension plan provisions is unwarranted.[5] Such interference

would serve only to discourage employers from creating voluntarily pension plans. Although Congress sought to establish minimum standards for pension plans to assure that employees would not be denied benefits arbitrarily, it recognized that if standards were too stringent, the creation of new pension plans would be discouraged. *See Holliday v. Xerox Corporation,* 732 F.2d 548 (6th Cir.1984). Thus, Congress struck a balance by providing for judicial review of trustees' administrative decisions while declining to dictate to employers the type of benefits which must be included in voluntarily established retirement plans. The district court modified impermissibly the plain language of the pension plan. Accordingly, the district court's judgment is reversed.

---

**5.** This lawsuit involves no allegation that the Retirement Program's trustees acted arbitrarily in denying benefits to Moore. Furthermore, Moore has not alleged that the trustees breached the fiduciary duty imposed upon them by ERI-

SA, *see* 29 U.S.C. Sec. 1101, or that the challenged provision is vague and ambiguous. Instead, Moore attacks the propriety of a benefit which the employer voluntarily chose to confer upon salaried employees.