Curtis K. ADAMS; Chester C. Carter; Vernon E. Day; Darrell G. Robertson; Jack J. Morton, Jr.; Forest Rippy, Jr.; Larry W. Ballard; William Carson Hooks; John M. Morton; Joe Latham; Dennis K. Harper; Roy Leon Blanks; Boyce A. White; William T. Smith; James K. Deese; Garnet C. Anderson; Horace Ameen; Johnny Lightner; Andrew L. Hodges; Keith E. McAllister; Max A. Bowers; Michael A. Strickland; Phillip G. McMackin; Donnie Lee Alford; James F. Neely; Gary F. Parker; Donald B. Haley; Charles F. Clary; James C. Freeman; William D. Steele, Appellees,

v.

GENERAL TIRE & RUBBER COMPANY SUPPLEMENTAL UNEMPLOYMENT BENEFIT PLAN, Appellant.

No. 85–1930.

United States Court of Appeals,
Fourth Circuit.

Argued March 3, 1986.

Decided June 25, 1986.

Paul B. Taylor (John O. Pollard, Blakeney, Alexander & Machen, Charlotte, N.C., on brief), for appellant.

Louis L. Lesesne, Jr. (Gillespie & Lesesne, Charlotte, N.C., Luther C. Elrod, III, Rock Hill, S.C., on brief), for appellant.

Before HALL and SPROUSE, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

SPROUSE, Circuit Judge:

General Tire and Rubber Company appeals from the district court's judgment in favor of Curtis K. Adams and twenty-nine other of its employees. The employees brought this action after General Tire re-

---

fused to pay them supplemental unemployment benefits (SUB) during a period of layoff. After a bench trial on stipulated facts, the district court found that General Tire had violated ERISA[1] when it denied the SUB benefits to the employees. The district court awarded each of the plaintiffs an amount stipulated by the parties for a period extending from October 10, 1983 to January 16, 1984. We affirm.

I.

The thirty plaintiffs are members of Local No. 850 of the United Rubber, Cork, Linoleum & Plastic Workers of America (the Union). They were employed under the provisions of a collective bargaining agreement executed on September 12, 1980 between General Tire and the Union. The 1980 agreement, like prior agreements dating back to 1970, contained a SUB plan designed to supplement unemployment benefits paid to qualified employees by the North Carolina Employment Security Commission. The SUB plan was funded by General Tire based primarily on the number of hours worked by members of the bargaining unit.[2] Articles V and VI of the SUB plan give General Tire responsibility for administration of the plan and the initial determination of eligibility for benefits. An employee may appeal an adverse determination to an Appeals Board made up of two Union representatives, two General Tire representatives and an impartial Chairman.

Article VIII, section 4(a) of the plan provides that upon termination of the collective bargaining agreement, General Tire has the right "to continue the Plan in effect and to modify, amend, suspend or terminate the Plan...." There are no specific provisions concerning the administration of pending or already approved claims or

---

1. ERISA is the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* (1982). The parties stipulated, and the district court held that General Tire's SUB plan is an "employee benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(3).

2. The funding provisions allow for maintenance of specified levels of funding under various contingencies. At the time the 1980 collective bargaining agreement expired, the fund contained over $200,000. The benefits awarded Adams and the twenty-nine other plaintiffs by the district court totaled $88,341.23, plus interest.

for the disposition of funds in the event of modification, amendment, or suspension. Section 4(b), however, provides:

> Upon termination of the Plan, the Plan shall terminate in all aspects except that the assets then remaining in the fund shall be subject to all of the applicable provisions of the Plan as then in effect and shall be used until exhausted to pay expenses of administration *and to pay benefits to eligible applicants laid off,* or thereafter laid off.

(Emphasis supplied).

In order to qualify for benefits under the SUB plan, General Tire employees first had to qualify for state unemployment benefits. Under North Carolina law, employees unemployed because of a strike are generally not entitled to unemployment benefits and, therefore, would not be entitled to benefits under the General Tire SUB plan. When the collective bargaining agreement expired on September 9, 1983, the Union called a strike. The plaintiffs, however, were laid off prior to the expiration of the collective bargaining agreement for reasons having no connection with the labor dispute. Therefore, they were eligible for and received unemployment benefits from the State of North Carolina.[3] The plaintiffs also received SUB benefits prior to the expiration of the collective bargaining agreement. They were not immediately recalled from layoff by General Tire, and it was stipulated that none of the plaintiffs remained on layoff as a consequence of the strike. H.C. Smith, General Tire's Vice-President for Industrial Relations, had primary responsibility for administering the SUB plan. Without specific directions from the Board of Directors, or anyone else at General Tire, Smith suspended payment of all benefits under the plan on October 9, 1983. The district court found that Smith was a fiduciary of the plan and that he violated the fiduciary requirements imposed by 29 U.S.C. § 1108(c)(3) when he suspended payment of benefits.

## II.

It is true, as General Tire contends, that an employer has no obligation under ERISA or any other federal law to provide supplemental unemployment compensation or any other type of benefits to his employees. Likewise, there is no question but that the parties can, by a collective bargaining agreement, set the terms of a trust or plan providing various types of benefits to employees as long as the terms do not violate any ERISA provision. *Moore v. Reynolds Metal Co. Retirement Program,* 740 F.2d 454 (6th Cir.1984).

■ Article VIII, section 4(b) of the SUB plan, properly interpreted, does not violate ERISA. As we construe it, the plan provides that General Tire may terminate any obligation, fiduciary or otherwise, arising after the 1980 contract's termination on September 9, 1983. That termination, however, cannot relate back so as to destroy legal relationships existing prior to the termination.

■ The district court ruled that Smith was acting as a fiduciary when he suspended the payments to Adams and the other

3. Counsel for General Tire represented to the district court:

> The Supplemental Employment Benefit Plan is designed to take care of people who are on layoff and are drawing unemployment compensation. It is designed to enhance that, but at the same time, it's recognized by the two parties to the agreement that in the event of the termination of the contract and a work stoppage, under North Carolina law and the law of many other states, employees are not allowed to draw unemployment compensation benefits, and the reason for that is that if they were allowed to go out on strike and draw unemployment compensation benefits, that would contribute to a continued labor unrest. So the legislature in this state and many other states has determined they are not entitled to draw those benefits. The same principle applies to the provision for allowing the company to terminate the Supplemental Employment Benefits any time a contract terminates and there is a work stoppage, and that is exactly what happened in this case. The contract expired. The employees went out on strike. None of them were allowed to draw unemployment compensation, and the company had the right under the terms of the plan to suspend the Supplemental Unemployment Benefits.

twenty-nine plaintiffs, and that Smith thereby breached the requirement of section 404 of ERISA that he "discharge his duties with respect to a plan solely in the interest of participants and beneficiaries" 29 U.S.C. § 1104(a)(1). General Tire argued correctly in the district court, as it does here, that, in its role contributing to the creation and administration of SUB plan, it "wore two hats." In one role, it acted as an employer, first when it negotiated for the plan and later when it terminated the plan. Its other role, however, was as administrator of the plan. It sought and obtained that role in the collective bargaining process and then delegated this aspect of its responsibility to Smith. It is that role that is subject to the fiduciary restrictions imposed by ERISA. The fund, once created, is subject to the provisions of ERISA and is to be administered without reference to any benefit that either General Tire or the Union might obtain from decisions made regarding the plan. The district court held that when acting as an administrator through Smith, its designated representative, General Tire was obligated to act solely in the interest of the plan's beneficiaries. *See Donovan v. Bierwirth,* 680 F.2d 263, 272 n. 8 (2d Cir.1982).

█ We conclude that the district court correctly ruled in favor of the plaintiffs.[4] These thirty employees were on layoff status when the contract ended and the strike occurred. They had been laid off for reasons unrelated to the labor disagreement. Unlike their co-workers, who were unemployed because of the strike, they were eligible for and received unemployment benefits from the State of North Carolina. They were, therefore, eligible to receive benefits under the SUB plan. In considering whether to suspend their receipt of benefits under the plan, General Tire was acting in its fiduciary capacity as the plan's administrator. It was not free to act as an employer for its own benefit.

It would have been altogether different if the benefit applications of employees laid off after the termination of the collective bargaining agreement were involved here. General Tire properly exercised a negotiated option relieving it from any duty it might have had to undertake *new* obligations through the plan after the expiration of the collective bargaining agreement.

As to Adams and the twenty-nine other plaintiffs, however, all the factors relating to their eligibility were fixed prior to the expiration of the collective bargaining agreement, and, thus, prior to the time when General Tire's right of suspension accrued. It is true that the payment of benefits extended beyond September 9, 1983, when the contract ended. The plaintiffs' rights, however, matured prior to that time. At the time of their application for benefits, the plan had assets of more than $200,000. The total benefits awarded to the plaintiffs amounted to $88,341.23, plus interest.

In sum, Smith made the decision affecting these plaintiffs' rights to a continuance of these benefits in his capacity as administrator and as a fiduciary, and the district court was correct in finding that his decision was a violation of his fiduciary duty so as to entitle the plaintiffs to awards in the stipulated amounts.

AFFIRMED.

---

**4.** The district court reached the correct result as far as the individuals who are plaintiffs in this case. However, the court was overextensive in its analysis. Smith was not required to act as a fiduciary in every decision he made regarding the plan. He was, however, a fiduciary with regard to the plaintiffs, who were already eligible for and receiving benefits when the contract terminated.