Lester SUTTER (91–1419); Anna Karbosky, Michael Manyak, Jr., and Stephen G. Panson (91–1420), Plaintiffs–Appellants,

v.

BASF CORPORATION, a Delaware corporation, formerly known as BASF Wyandotte Corporation, and Wyandotte Chemicals Corporation, Defendant–Appellee.

Nos. 91–1419, 91–1420.

United States Court of Appeals, Sixth Circuit.

Argued March 30, 1992.

Decided May 18, 1992.

John A. Lygizos (argued and briefed), Detroit, Mich., for plaintiffs-appellants.

Robert A. Marsac (argued and briefed), Eric H. Lipsitt, Karen E. Bridges, Wise & Marsac, Detroit, Mich., for defendant-appellee.

Before: MARTIN, Circuit Judge; and LIVELY and BROWN, Senior Circuit Judges.

LIVELY, Senior Circuit Judge.

These consolidated appeals concern rights of retirees under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. All of

the plaintiff-retirees worked for the employer prior to the enactment of ERISA, and their claims also implicate the requirements of a pre-ERISA federal law, the Welfare and Pension Plan Disclosure Act (WPPDA), 29 U.S.C. §§ 301–309 (1958) (repealed effective January 1, 1975).

## I.

### A.

The plaintiffs are former salaried employees of BASF[1] who were covered under the company's "Basic Retirement Income Plan," adopted in January 1950. All salaried employees with 180 months of credited service were automatically enrolled in this plan and only BASF made contributions. Later in 1950 BASF adopted a "Supplemental Retirement Income Plan." This was a separate plan under which eligible salaried employees could voluntarily contribute a prescribed percentage of their salaries; BASF would then make a contribution for the benefit of each participant. Three plaintiffs seek compensation for service time lost in calculation of their retirement benefits based on their failure to contribute voluntarily to the Supplemental Plan. The other plaintiff seeks compensation for service time lost because he withdrew his contributions to the Supplemental Plan. All claim that BASF breached its duty to disclose to them the effect noncontribution and withdrawal of contributions would have on the final computation of their retirement benefits.

The first literature prepared by BASF about the Supplemental Plan did not address the effect of employees withdrawing their voluntary contributions before retirement. However, by 1960, the information booklets periodically published by BASF regarding the Supplemental Plan did explain:

> **What if I do not join the plan when I am first eligible?**
>
> You can join at a later date, but, of course, you will not be allowed credited

service for the period during which you were eligible but did not participate.

The 1960 Supplemental Plan summary described "credited service" as:

> 1) The total number of years you were continuously employed prior to June 1, 1950, after the month in which you attained age 30, *and*
>
> 2) Each month after June 1, 1950 during which you received compensation from the company *provided you joined the Plan immediately upon becoming eligible and made the contributions required under the Plan.* (emphasis added)

BASF merged the Basic and Supplemental Plans in 1961, and the consolidated Retirement Income Plan for Salaried Employees (The Plan) contained the components of both earlier plans. In 1961 The Plan set forth three formulae that could be used to calculate an employee's benefits upon retirement, with the assurance that an employee's final benefits calculation would be made under the formula yielding the highest monthly payment to the employee. Formulae A and C took into account all of an employee's years of credited service as defined by the earlier Basic Plan, plus a variety of other factors; Formula B did not count the years of credited service during which an eligible employee did not contribute to the Supplemental Plan.

In 1965 BASF eliminated the voluntary contributions feature of The Plan. Employee benefits could then be calculated under two formulae: Formula I counted, among other things, only those years of credited service between 1950 and 1965 during which an eligible employee made voluntary contributions; and Formula II counted, among other things, all of an employee's credited service. A draft of a Memorandum explaining the change to BASF's employees stated:

> Those employees who have been eligible to make contributions, but elected not to

---

**1.** BASF is the successor in interest to BASF Wyandotte Corporation and Wyandotte Chemicals Corporation. The four plaintiffs in this case were all hired originally by Wyandotte Chemicals Corp., but we will refer to the defendant as BASF even though many of the facts in the case refer to events that occurred before BASF purchased Wyandotte Chemicals Corp.

do so, will receive full benefits on our final pay formula (Formula A as described in booklet dated August 1, 1961) if that formula is to their advantage, for service after May 1, 1965, only.

Beginning in 1950 BASF periodically published summaries of the Basic Plan, the Supplemental Plan and The (consolidated) Plan. The summaries all set forth eligibility requirements, options for the payment of benefits, and interaction of pensions with Social Security benefits. In addition, many of the summaries included examples to help employees calculate their own benefits under the various formulae.

BASF presented undisputed testimony that the summary booklets were placed on file in the company's Benefits Department at the principal office in Wyandotte, Michigan. The director of employee benefits also testified that, to his knowledge, the booklets were distributed to employees, but the plaintiffs in this case contend they did not see or receive any benefits summaries until the 1970s. After the enactment of ERISA, in addition to making numerous changes in the structure of The Plan to bring it into compliance with federal law, BASF complied with ERISA's requirement that each participant and beneficiary affected by a plan be furnished with a Summary Plan Description (SPD). Some of the plaintiffs recalled receiving SPDs regularly from the mid–1970s until their retirement.

### B.

The four plaintiffs in this case all retired subject to the provisions of either the 1984 or 1987 version of The Plan. For purposes of this litigation, the two versions had the same structure—both contained two formulae for calculating benefits. Formula I was an actuarial device that did not take into account the years of service between 1950 and 1965 in which an eligible employee elected not to make voluntary contributions to the pension fund, and Formula II counted, among other things, all of an employee's years of service. The 1987 Plan guaranteed:

> In no event shall the Participant's benefit ... be less than the accrued benefit (if any) of the Participant under any Predecessor Plan calculated as of the day before he became a Participant of this Plan.

Both plans (1984 and 1987) granted the Benefits or Pension Committee a high degree of discretionary power. For example, the 1987 Plan provided:

> [T]he Benefits Committee has been delegated certain administrative functions relating to the Plan with all powers necessary to enable it to properly carry out such duties. The Benefits Committee shall have powers to construe the Plan and ... determine all questions that may arise thereunder relating to (a) the eligibility of individuals to participate in the Plan, and (b) the amount of benefits to which any Participant or Beneficiary may become entitled hereunder.

As BASF employees began to retire in the late 1970s and early 1980s, many eligible persons who had not voluntarily contributed to the Supplemental Plan or had withdrawn their contributions complained about how much less they were scheduled to receive in benefits than their counterparts who did contribute voluntarily between 1950 and 1965. The Pension Committee undertook a study to consider possibilities for crediting lost service, including arbitrarily restoring one-half of all lost service and allowing employees to purchase the lost service. BASF concluded that any such change in The Plan was not feasible because of significant administrative complexity and costs. Among other factors, the Pension Committee considered the fact that any amendments would require I.R.S. approval and would involve large additional employer contributions. In a confidential memorandum dated November 19, 1984, a BASF vice-president advised all site managers of the decision not to change the plan. A BASF employee testified that the decision was not motivated solely by cost, but also by considerations of equity to employees who had made contributions voluntarily between 1950 and 1965 and therefore deserved larger pension payments upon retirement.

## II.

The plaintiffs filed two actions under ERISA claiming breach of contract and fiduciary duty, misrepresentation, and discrimination in the awarding of retirement benefits. The district court consolidated the cases for discovery purposes.

The claims of all four plaintiffs relate to the Supplemental Plan. Three of them never contributed to that plan, and the fourth contributed to it until the 1965 elimination of contributions by employees to the merged plan. At that time, allegedly in reliance upon advice by a supervisor that withdrawal of his contributions would have a minimal impact on his ultimate pension, he withdrew all that he had contributed.

Basically, the plaintiffs argued in the district court and in this court that if they had known the impact on their retirement benefits of voluntarily contributing to the Supplemental Plan from their dates of eligibility to 1965 (and of withdrawing contributions in the case of one), they would have made such contributions (and not withdrawn those already made).

At the conclusion of extensive discovery, BASF moved for summary judgment on all claims. After a hearing, the district court granted BASF's motion for summary judgment, 757 F.Supp. 813, finding that there were no disputed material facts in issue. In addressing the plaintiffs' claims that they were not given credit for all their years of service, the court found that every version of BASF's pension plan contained at least one formula under which all of an employee's years of service were credited and that a retiree always received benefits under the formula that yielded the highest monthly payments.

The district court next found that BASF met federal requirements for disclosure of the components of the plans, holding that the contents and availability of the plans and summaries were always in compliance with current laws, including the WPPDA and ERISA. As for the plaintiffs' claim that BASF should have disclosed the contents of the November 1984 confidential memorandum, the court held that BASF had no duty to disclose potential amendments or revisions to The Plan.

Finally, the court considered the plaintiffs' claims relating to the company's decisions in 1961 to merge the plans and in 1984 not to grant lost credited service to employees who did not voluntarily contribute to the plan. The court found that both determinations were business decisions within the company's discretion and outside the scope of ERISA's fiduciary standards. The court decided that, in the absence of a statutory violation, it could not review the decisions.

## III.

On appeal the plaintiffs contend that the district court decided a number of disputed material issues of fact contrary to Fed. R.Civ.P. 56(c), which provides that summary judgment may be rendered only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. They argue that they produced evidence that BASF failed to give them credit for all their years of service and failed to give them adequate notice of the operation of the Supplemental Plan. In particular, they assert that it was an abuse of discretion to amend The Plan in 1965 without informing them of the impact of contributing or not contributing to The Plan, or of withdrawing contributions.

The plaintiffs also argue that BASF was required to disclose the 1984 study and the conclusions in the confidential memorandum, and that BASF abused its discretion in failing to amend The Plan in 1984 to increase the retirement benefits of eligible employees who had not contributed to the Supplemental Plan prior to 1965. At oral argument, counsel for the plaintiffs stated that the material issue in the case was the sufficiency of the notice, not the objective qualities of The Plan.

BASF responds that the only material facts in the case are not contested, namely that: (i) BASF had discretion to administer its plan; (ii) one pension calculation formula always took into account all of an employee's years of service; and (iii) BASF's

plans and summaries always complied with existing statutory regulations. BASF also maintains that its 1961 decision to merge the plans and the 1984 determination not to amend The Plan were purely business decisions, reviewable only under an abuse of discretion standard, and that there was no abuse of discretion.

### IV.

We review de novo a district court order granting summary judgment. *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). After such review we conclude that the district court did not err by granting BASF's motions for summary judgment in this case.

### A.

■ Taking plaintiffs' counsel at his word that the material issue in this case is adequacy of notice, we have no hesitation in affirming the district court's finding that BASF gave the notice required by law. The WPPDA's disclosure provision only required an employer to make available copies of a description of a pension plan for examination by a participant or beneficiary at the employer's principal place of business. The employer was required to deliver a copy to a participant or beneficiary only upon receipt of a written request from such a person. 29 U.S.C. § 307(a).

BASF presented undisputed testimony that the summary description booklets were kept on file at company headquarters in Wyandotte, Michigan, and no plaintiff testified that he or she had made a written request for a copy. Further, although some of the plaintiffs admitted being aware of the Supplemental Plan, and one even contributed to it, their failure to inquire further appears to negate any claim that BASF breached a common law fiduciary duty under Michigan law as it may have applied prior to the preemption of such claims by ERISA. Additionally, no plaintiff testified unequivocally that he or she did not receive plan summaries during periods of eligibility prior to 1965.

From the entire record we conclude that the plaintiffs have failed to demonstrate the existence of any material issues of fact regarding disclosure or notice of the provisions of the Supplemental Plan. In effect, the plaintiffs have sought to hold BASF to ERISA's notice requirements during the pre-ERISA years. We have examined samples of the post-ERISA SPDs and find their content fully in compliance with the law. It is undisputed that BASF did distribute these summaries to affected persons.

### B.

The plaintiffs make two related arguments that BASF abused its discretion, or breached its fiduciary duty, in connection with the decision not to amend The Plan in 1984 in order to give eligible employees who had not contributed to the Supplemental Plan, or had withdrawn their contributions, a portion of the benefits they would have received by contributing or by leaving their contributions in the fund.

■ The plaintiffs do not identify any material issues of fact with respect to these claims, and we find no support in law for these contentions. Though not clearly articulated, the plaintiffs appear to argue that because BASF acted as plan administrator, all of its actions and decisions with respect to the various plans were made in a fiduciary capacity. Federal law permits an employer to act as administrator of benefits plans. Because there is a potential conflict of interest in such an arrangement, "that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion'." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), citing Restatement (Second) of Trusts § 187, Comment *d* (1959); *Callahan v. Rouge Steel Co.*, 941 F.2d 456, 459 (6th Cir.1991). In examining an administrator's decision under a plan that gives the administrator broad "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," we apply an "arbitrary and capricious" standard of review. *Firestone*, 489 U.S. at 115, 109 S.Ct. at 956; *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 694 (6th

Cir.1989), *cert. denied,* 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990).

Applying the correct standards, the district court found no reason to overrule BASF's decisions now questioned by the plaintiffs, and we agree.

This court has held that "a company does not act in a fiduciary capacity when deciding to amend or terminate a welfare benefits plan." *Adams v. Avondale Industries, Inc.,* 905 F.2d 943, 947 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990) (citing *Musto v. American General Corp.,* 861 F.2d 897, 911 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989)). In the context of a pension benefits plan, we have held that "[a]bsent a violation of federal or state law, a federal court may not modify a substantive provision of a pension plan." *Moore v. Reynolds Metals Co. Retirement Program for Salaried Employees,* 740 F.2d 454, 456 (6th Cir.1984), *cert. denied,* 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985). The *Moore* court explained: "court[s] may review the *administration* of a pension fund.... [h]owever, review of a plan's provisions for reasonableness is improper." *Id.* at 456 n. 4 (emphasis in original); *see also Musto,* 861 F.2d at 911 ("There is a world of difference between administering a welfare plan in accordance with its terms and deciding what those terms are to be. A company acts as a fiduciary in performing the first task, but not the second."). Hence, pure business decisions are not governed by fiduciary standards. *Berlin v. Michigan Bell Telephone Co.,* 858 F.2d 1154, 1163 (6th Cir. 1988).

■ BASF's decision to merge the two plans in 1961 clearly constituted the establishment or amendment of a pension plan and is therefore a business decision that should not be overturned by the court in the absence of violation of state or federal law. *Moore,* 740 F.2d at 456.

■ BASF's decision in 1984 not to restore lost service to its noncontributing employees was also a business decision because it was made not as part of a denial of benefits under the present plan, but rather in the context of considering changing an existing, legitimate plan. In such a case, "[a] company's reason for treating a class of beneficiaries differently is not always readily ascertainable. For this reason, a court should be hesitant to substitute its judgment for that of the company." *Id.* at 456 n. 3. In this case, BASF even provided a number of good reasons for its decision not to restore lost benefits, including equity to those who did contribute to the Supplemental Plan.

Even if this decision were viewed as one to deny benefits by interpreting The Plan rather than a business decision, we would review this fiduciary function under an arbitrary and capricious standard, given the breadth of BASF's discretion as administrator. We have stated that "[w]ithout a showing of internal inconsistency or bad faith or some other ground for calling the [administrator's] determination into question, the arbitrary and capricious standard demands affirmance" of an administrator's construction of a plan. *Davis,* 887 F.2d at 695. The Pension Committee gave several well-grounded reasons for not amending The Plan in 1984; the mere fact that cost to the employer was one factor does not call for judicial intervention to overturn the decision.

Finally, as for the plaintiffs' complaint that BASF was required to disclose the contents of the 1984 confidential memorandum, we have held that an employer does not have a duty "to say anything at all or to communicate with potential plan participants about the future availability" of a retirement incentive plan. *Berlin,* 858 F.2d at 1164. The *Berlin* court held, however, that when "the plan administrator and/or plan fiduciary does communicate with potential plan participants *after serious consideration* has been given concerning a future implementation or offering under the plan, then any material misrepresentations may constitute a breach of their fiduciary duties." *Id.* (emphasis in original).

■ In the present case, assuming the 1984 decision not to restore lost credited

service to BASF employees was a business decision about prospective benefits under The Plan, BASF was not under any duty to disclose its decision to prospective beneficiaries. Nor does the confidentiality of the memorandum constitute a misrepresentation because, in the memorandum, the vice-president who authored it did advise the site managers: "[a]s you get inquiries from individuals, however, you can now rely on a firm policy decision." Hence, the company intended to disclose its position to anyone who asked and the plaintiffs have offered no evidence that they were materially misled about the company's policy when they began to investigate their own retirement situations.

### C.

In addition to the foregoing issues raised by all of the plaintiffs, two plaintiffs sought damages for alleged overt misrepresentations concerning their retirement benefits.

■ The plaintiff Lester Sutter asserts that shortly after the contributory feature of The Plan was eliminated in 1965, he spoke with a supervisor about the effect of withdrawing his earlier contributions. In deposition, Sutter testified that the supervisor advised that withdrawing the contributions would not affect his pension more than ten dollars a month, and that withdrawal would be a good idea if he had other plans for the money. Sutter withdrew his $1700 in contributions, and claims that he lost credited service for all of his years of contribution, changing his benefit from $761 per month to $461.

The plaintiff Anna Karbosky met with a benefits counsellor prior to her retirement date and was advised that, based on an employment date of 1944, her monthly benefit upon retirement in April 1988 would be $1,079 per month. Shortly after her retirement she was advised that her benefit had been calculated from 1953 rather than from 1944, and that it would be $861 per month. The district court found that Ms. Karbosky had begun working for BASF in 1944 as an hourly employee and had become a salaried

employee in 1953. All of the plans applied only to salaried employees.

These plaintiffs cannot recover for alleged misrepresentations under a theory of promissory estoppel. The written plan controls, and the employer cannot be estopped on the basis of oral representations. *Davis*, 887 F.2d at 696; *Musto*, 861 F.2d at 910. The plaintiffs did not demonstrate that BASF intentionally deceived them; so far as the record shows, the misinformation resulted from honest mistakes. Absent a showing that BASF violated the terms of the written plans or dealt with them in bad faith, the plaintiffs have no right to recover damages because of the claimed misinformation.

### CONCLUSION

All plaintiffs failed to establish the existence of genuine issues of material fact on their basic claims that because of BASF's failure to disclose the terms of the Supplemental Plan they lost credited service for years in which they were employed and eligible to contribute to that plan. Similarly, the plaintiffs Sutter and Karbosky failed to establish the existence of genuine issues of material fact upon which they could base a claim for recovery for misinformation as to the amount of their benefits. Finally, BASF's decision to merge existing plans in 1961, to end voluntary contributions in 1965, and not to amend The Plan in 1984 were business rather than fiduciary decisions, which the court may not reverse on this record. BASF was entitled to judgment as a matter of law.

The judgment of the district court is affirmed.