**Evelyn M. BOLAND, Plaintiff,**

v.

**KING COUNTY MEDICAL BLUE SHIELD and the Boeing Company, Defendants.**

**No. C92–504D.**

United States District Court, W.D. Washington, at Seattle.

July 9, 1992.

Richard C. Yarmuth, Culp, Guterson & Grader, Seattle, Wash., for plaintiff.

Kathy Ann Cochran, Wilson, Smith, Cochran & Dickerson, Seattle, Wash., for defendant King County Medical.

Bruce D. Corker, Perkins Coie, Seattle, Wash., for defendant Boeing.

## ORDER

DIMMICK, District Judge.

Plaintiff Lyn Boland has brought this action under the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* (ERISA), contesting defendants' denial of coverage under an employer's medical plan. Defendants have filed separate motions for summary judgment, but refer to and incorporate each other's briefs and affidavits and will be referred to collectively as "defendants." The Boeing Company ("Boeing") emphasizes contract principles to argue for dismissal. Boeing contends that the plan lan-

guage and the underlying bargaining agreement classify as an excluded experimental procedure any procedure so defined by the national Blue Cross and Blue Shield Association ("national Blue Cross"). Defendant King County Medical Blue Shield ("King County Medical") on the other hand emphasizes the plan's exclusion of any experimental procedure that is not generally recognized by the medical profession. Plaintiff insists that defendants' decisions as to what constitutes experimental treatment should not be entitled to deference because of a conflict of interest or because the decisions were not made by a fiduciary.

The Court has considered the briefs and affidavits filed by the parties and concludes that summary judgment in favor of defendants is justified insofar as the employer medical plan relies on the classification of a third party—national Blue Cross. This conclusion involves no disputed issue of material fact and can be decided by the Court as a question of law premised on the plain language of the plan. Fed.R.Civ.P. 56.

### FACTS

Plaintiff Lyn Boland was diagnosed with breast cancer in August of 1991. She subsequently underwent surgery and has received extensive chemotherapy. There is no question that this earlier treatment is covered by the terms of the plan. In January of 1992, Mrs. Boland's treating physicians recommended that she be treated at the Fred Hutchinson Cancer Research Center with high dose chemotherapy with autologous bone marrow transplant ("HDC with ABMT"). Mrs. Boland sought preauthorization for this treatment under the Boeing Medical Plan. Mrs. Boland was covered under the medical plan because of her husband's employment as a Boeing engineer.

The details of the medical plan at issue here were negotiated between Boeing and Seattle Professional Engineering Employees Association ("SPEEA"). See Collective

Bargaining Agreement, CP 34, Exhibit B. The Boeing Company is the plan sponsor and pays for all benefits under the plan with no limitation as to amount of payments; the Welfare Benefit Plans Committee ("Committee") is the plan administrator and hears appeals. See Health Care Plans, 1990 Edition, CP 34, Exhibit A, page 54. The four members of the Committee are Boeing executives. Cannon Deposition, CP 50, Exhibit 13, page 12.

The Boeing Company signed an agreement January 1, 1987, with defendant King County Medical to act as the service representative for the medical plan and as an agent for Boeing to process claims and disburse payments. See Administrative Services Agreement, CP 34, Exhibit C. King County Medical is a nonprofit organization, which is paid an annual fee by Boeing unaffected by any benefits paid.[1] CP 60.

The collective bargaining agreement and the Health Care Plans document exclude coverage for experimental or investigational medical services or supplies. The SPEEA agreement states the exclusion as follows:

> Experimental or investigational medical services or supplies (and related complications) meaning any services so classified by the National Blue Cross and Blue Shield Association and any service whose use is still under clinical investigation by health professionals or is not generally recognized by the medical profession as tested and accepted medical practice. This exclusion also applies to items requiring Federal Drug Administration or other governmental agency approval if such approval was not granted at the time the service or supply was ordered.

*Id.* at ¶ 19, A–28. The Health Care Plans document refers to exclusions of "[e]xpenses for experimental or investigational services and supplies (as defined on page 57), and related complications." CP 34,

---

1. The Court notes that the plan sponsor and plan administrator here are the same entity (Boeing), and King County Medical may have some corporate relationship with national Blue Cross, but the latter issue has not been raised.

Exhibit A, page 28. This definition follows:

An experimental or investigational service or supply is one that meets at least one of the following:

1. Is under clinical investigation by health professionals and is not generally recognized by the medical profession as tested and accepted medical practice.

2. Requires approval by the Federal Drug Administration or other governmental agency, and such approval has not been granted at the time the service or supply is ordered.

3. Has been classified by the national Blue Cross and Blue Shield Association as experimental or investigational.

CP 34, Exhibit A, page 56–57.

Following Mrs. Boland's request for authorization of HDC with ABMT treatment, King County Medical's director Dr. Stanley Pomerantz advised Mrs. Boland that the treatment was not covered under the terms of the plan. Letter dated February 19, 1992.[2] This denial was appealed to the Committee which also denied coverage. Defendants denied coverage on grounds of "experimental or investigational service" as defined in numbers 1 and 3 above.

Mrs. Boland filed suit March 27, 1992. On April 1, 1992, Mrs. Boland filed a motion for preliminary injunction. The motion for preliminary injunction was ultimately resolved by the parties permitting Mrs. Boland to proceed with treatment, but the issues raised therein were retained for trial. The Court set an expedited trial schedule, with trial date set for August 23, 1992.

## ISSUES

1. Although it is conceded that the plan gives the administrator discretion to interpret the plan, the entity named as plan administrator (Committee) is a fiduciary with a conflict of interest; therefore, is a less deferential standard of review appropriate? [3]

2. Can defendants properly base a determination of the experimental nature of a particular medical treatment on a third party's decision—national Blue Cross—when it is specified in the collective bargaining agreement with SPEEA and the language in its medical plan?

3. Applying the appropriate standard of review, can the Court conclude as a matter of law (applying summary judgment standards) that the plan administrator properly denied treatment.

## DISCUSSION

Discussion below will focus first on the standard of review for defendants' decisions. Then the above two bases for denial ((1) not generally recognized by the medical profession, and (3) classified as experimental by national Blue Cross) will be covered under the appropriate standard.

### Standard of Review

At issue here is the standard of review to be applied when a health plan administrator of an employer funded plan governed by ERISA, with express full discretionary powers to interpret the terms of the plan, and under a conflict of interest because of duties owed to both the beneficiaries of the plan and the company providing the plan, makes a decision denying coverage on the

**2.** The letter stated that the treatment for breast cancer patients was still under clinical investigation and explained ongoing clinical tests. Additionally, the letter referred to classification by national Blue Cross:

The national Blue Cross and Blue Shield Association (BCBSA) has classified this therapy as investigational on two occasions. The original determination was December 1988, when the Association found that HDC with ABMT is considered investigational for the treatment of breast cancer. This determination was based on a thorough review of the published literature up until that time. Because of numerous challenges to this policy, particularly legal actions, the Association again reviewed this procedure in May 1990.... In addition, the BCBSA hired Dr. David Eddy of Duke University Medical School to do an independent evaluation of this issue.

**3.** Although plaintiff refers to an earlier case in this Court in which summary judgment was denied, a different medical plan was involved there. *Leroux v. King County Medical Blue Shield,* Cause No. C92–117D. Unlike the *Leroux* case, there is no issue here as to the delegation of discretion to the plan administrator.

grounds of a disallowed experimental procedure. Under the law, the standard of review is one of deference to the plan administrator, tempered by the existence of the conflict of interest.

Originally, the standard of review for actions of this sort was one of deference to the plan administrator, or the "abuse of discretion" standard, which arose from the application of trust law principles to actions brought under ERISA. *See, e.g., Jung v. FMC Corp.,* 755 F.2d 708, 711 (9th Cir. 1985). The United States Supreme Court addressed the issue in a case involving a retirement benefit plan. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The *Firestone* Court held that the denial of benefits by an administrator of a plan governed by ERISA must "be reviewed under a 'de novo' standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan". *Id.* at 115, 109 S.Ct. at 956. The Court also noted that if the decision in question was made by a plan administrator with discretionary duty who is operating under a conflict of interest, the conflict "must be weighed as a 'facto[r] in determining whether there is an abuse of discretion'." *Id.* at 115, 109 S.Ct. at 956, quoting Restatement (Second) of Trusts § 187, comment d (1959). The Ninth Circuit has applied the Supreme Court's abuse of discretion standard for reviewing decisions of a plan administrator who has discretionary authority: *Eley v. Boeing Co.,* 945 F.2d 276 (9th Cir.1991); *Jones v. Laborer's Health & Welfare Trust Fund,* 906 F.2d 480 (9th Cir.1990).

The Boeing Health Care Plan explicitly states: "The Committee [the plan Administrator] will apply the terms of the Plan and will, as appropriate, use its discretion in interpreting the terms of the Plan". CP 34, Plaintiff's Exhibit A, at 49. The language of the plan is similar to language found by the Ninth Circuit to confer authority on the administrator. *See, e.g., Eley,* 945 F.2d at 278; *Dytrt v. Mountain State Tel. & Tel. Co.,* 921 F.2d 889, 894 (9th Cir.1990); *Jones,* 906 F.2d at 481. *Accord*

*Batchelor v. International Bhd. of Elec. Workers Local 861 Pension & Retirement Fund,* 877 F.2d 441, 442–43 (5th Cir.1989); *Boyd v. Trustees of United Mine Workers Health & Retirement Funds,* 873 F.2d 57, 59 (4th Cir.1989). The language of the Plan clearly confers authority on the Administrator, and the plaintiff does not dispute this point.

The Ninth Circuit has also held that "if the employer is an administrator, a conflict ordinarily exists". *Eley,* 945 F.2d at 279. *See also Dytrt,* 921 F.2d at 894 and n. 4 (quoting *Firestone,* 489 U.S. at 115, 109 S.Ct. at 956). But the *Eley* court also differentiated between plans which were entirely employer funded and the result of arm's length collective bargaining (as here), and plans purchased by employers from insurance companies. The *Eley* court noted that the traditional doctrine of *contra proferentum* (reading the contract against the insurer) is inapplicable to the former type of agreement. *Eley,* at 280.

■ The Administrator of the Boeing Plan, the Committee, consists of four Boeing executives. Cannon deposition, CP 50, Ex. 13 at p. 12. Plaintiff has submitted evidence of Boeing's concern for the high cost of employee medical benefits. CP 57, Exhibit A. It is clear that any savings in employee benefits will revert to Boeing. Under Circuit authority, then, a conflict of interest exists. Following *Firestone,* the conflict must be taken into account when determining whether there was an abuse of discretion by the administrator. 489 U.S. at 115, 109 S.Ct. at 956.

■ There is no direct Ninth Circuit authority on the actual scope of the heightened review due to the conflict of interest. The Eleventh Circuit has attempted to define the standard, ruling that "even a conflicted fiduciary should receive deference when it demonstrates that it is exercising ... [reasonable] ... discretion". *Brown v. Blue Cross & Blue Shield of Alabama,* 898 F.2d 1556, 1568 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991). Furthermore, noted the *Brown* court, the fiduciary should

"bear the burden of dispelling the notion that its conflict of interest has tainted its judgement". *Id.* However, "the party challenging … may still succeed if the action is arbitrary and capricious by other measures". *Id.*

The Eastern District of Washington has adopted the *Brown* standard in a case factually similar, but involving disability benefits: "Thus, the analysis in *Brown* applies; the court will review the Committee's decision for an abuse of discretion, but take particular note of the obvious potential for bias that is present and afford the decision little, if any, deference." *Poole v. Seattle–First Nat'l Bank,* 741 F.Supp. 837, 846 (E.D.Wash.1990).[4]

Following the above reasoning, the standard of review when an ERISA plan administrator has both discretionary authority and is operating under a conflict of interest is more stringent than purely abuse of discretion, but the degree of stringency is not clear. Under *Firestone,* when a plan administrator has discretionary authority, a reviewing court will not apply a de novo standard of review. 489 U.S. at 115, 109 S.Ct. at 956. Also under *Firestone,* any conflict of interest is required to be taken into account, so a higher standard of review than total deference is called for. 489 U.S. at 115, 109 S.Ct. at 956. As a result, three levels of review are possible. First, most deferential, illustrated by the decision in *Eley.* The standard there is abuse of discretion—defined as arbitrary and capricious or supported by substantial evidence. *Eley,* 945 F.2d at 278 n. 1. Conversely, the third level is the least deferential. As noted in *Poole,* this level gives the Administrator's decision "little, if any, deference". 741 F.Supp. at 846. Under *Firestone,* however, there must be some deference, since de novo review is proscribed. 489 U.S. at 115, 109 S.Ct. at 956. The second level is something between the first and third. In *Brown,* the Eleventh Circuit held that this level of review required only that the administrator prove that the conflict of inter-

est did not affect the decision. 898 F.2d at 1568.

Plaintiff also argues that the terms of the plan delegating classification to national Blue Cross should be reviewed as a matter of law under a de novo standard. *See, e.g., Branch v. Mobil Oil Corp.,* 772 F.Supp. 570, 571 (W.D.Okla.1991). The Court is not entirely certain of plaintiff's argument here; however, the Court would indeed review de novo the wording of the Plan itself. This will be discussed in greater detail in a later section.

This Court concludes that it is not necessary to refine further the standard of review to be applied to discretionary decisions except to say that the standard is not purely deferential. As will be explained next, if this Court applies anything less than a purely deferential standard to defendants' exclusion of coverage for experimental procedures based on recognition by the medical profession, an issue of fact is presented.

■ A different analysis, however, will be applied to defendants' exclusion on the basis of national Blue Cross recognition. The Court will review de novo the wording of the plan as it would any contract. However, plaintiff's fiduciary argument is still tied to this analysis.

### *Recognized by the Medical Profession*

■ To be recognized as an experimental or investigational service, the Boeing Plan requires that a medical procedure meet at least *one* of three possible standards. The first standard defines an experimental service as one that "[i]s under clinical investigation by health professionals and is not generally recognized by the medical profession as tested and accepted medical practice." Mrs. Boland's treating physician Dr. Henry Kaplan and consulting physicians at Fred Hutchinson Cancer Research Center recommended HDC with ABMT as treatment for Mrs. Boland's breast cancer as her best hope for survival. Plaintiff has submitted evidence of the efficacy of HDC with ABMT to treat breast cancer and its

---

4. Plaintiff has also submitted a number of unreported opinions which have recognized the con-

flict in employer administered plans for similar reasons.

acceptance nationally. Affidavits attesting to its acceptance have been submitted by doctors of considerable renown including E. Donnall Thomas, M.D., a Nobel Laureate.

Defendants have similarly submitted considerable evidence indicating that HDC with ABMT as a treatment for breast cancer is still in the experimental-investigatory stage. See Affidavit of Dr. Pomerantz and others.

Under a less than deferential standard of review, this Court concludes that plaintiff has identified an issue of fact as to acceptance by the medical community. Summary judgment would not be appropriate on this issue.

### Classified by National Blue Cross

Defendants' second basis for denying coverage is the third standard, which defines an experimental service as one that "[h]as been classified by the national Blue Cross and Blue Shield Association as experimental or investigational."

Defendants argue that this reference to a third party for a classification is analogous to other references in the Plan, e.g., reliance on the Federal Drug Administration's approval of an experimental service and reliance on the Social Security Administration definition of disability.

Defendants further argue that inclusion of the national Blue Cross classification was not a delegation of discretionary duties to a third party, who would then be required to act as a fiduciary in making its determination. Rather, defendants characterize reliance on national Blue Cross by the Plan sponsor (Boeing) as a ministerial act outlining the terms of the Plan in conformance with its collective bargaining agreement. Emphasizing the distinction between creating a plan and managing one, defendants argue that Boeing is not a fiduciary when setting up the plan terms. ERISA applies a fiduciary standard only to the management of the plan:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets....

29 U.S.C. § 1002(21)(A).

> Every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan.

29 U.S.C. § 1102(a)(1). Thus defendants' argument is that the role assigned to national Blue Cross is not one of controlling or managing the plan.

As defendants point out, an employer is under no obligation pursuant to ERISA as to what benefits are included within the plan.

> [A]n employer is free to choose which benefits to include in a retirement program so long as stringent requirements of ERISA are met and no other law or policy is violated.

Moore v. Reynolds Metals Co. Retirement Program for Salaried Employees, 740 F.2d 454, 457 (6th Cir.1984). Thus Boeing as an employer funding its own medical plan was free to include or exclude coverage of any procedure. Boeing, however, was bound by the collective bargaining agreement with SPEEA. The wording of the experimental exclusions in the plan follows that in the bargaining agreement.

Defendants cite to a 1988 case from the Third Circuit holding that a provision in a pension plan which left to the employer a determination of the effect of an employee's early retirement did not violate the spirit of ERISA.

> ERISA is not a direction to employers as to what benefits to grant their employees. Rather, ERISA is concerned with the *administration* of an established plan and its elements.

Hlinka v. Bethlehem Steel Corp., 863 F.2d 279, 283 (3d Cir.1988). The Hlinka court also observed that an employer is not acting as a fiduciary when he/she designs a benefit plan. Id. at 285.

Similarly in Whitaker v. Texaco, Inc., 729 F.Supp. 845 (N.D.Ga.1989), a case

brought under ERISA for pension benefits and challenging the plan's reliance on actuarial tables, the court noted: "It is an elementary principle of trust law that a fiduciary analysis applies to situations where a trustee has discretion." *Id.* at 854, *citing* Restatement (Second) of Trusts § 187. Thus where "a trustee's challenged action is merely ministerial, *e.g.*, required by the terms of the trust ... the court will invoke a contractual analysis." *Id.* at 854.

Defendants also cite to *Hickman v. Tosco Corp.*, 840 F.2d 564, 566 (8th Cir. 1988) (recognizing that an employer had a dual role, as administrator of plan and as employer, and only the role of administrator was held to a fiduciary standard); *Foltz v. U.S. News & World Report, Inc.*, 613 F.Supp. 634, 639 (D.C.1985) (a determination of benefits by a plan administrator cannot be arbitrary and capricious as a matter of law if there is no discretion involved in the determination). *See also Nazay v. Miller*, 949 F.2d 1323, 1329 (3d Cir. 1991); *Fletcher v. Kroger*, 942 F.2d 1137, 1139 (7th Cir.1991).

In countering defendants' arguments distinguishing between ministerial and fiduciary duties, plaintiff relies on the ERISA statute. That is, both the Committee as plan administrator and King County Medical as a designated claims administrator are fiduciaries under the statute. 29 U.S.C. § 1002(21)(A)(iii). *See also Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1284–85 (9th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991). As fiduciaries, each is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries...." 29 U.S.C. § 1104(a)(1).

Plaintiff's argument thus appears to be that delegation to a third party is contrary to the policies of ERISA, and that a fiduciary cannot immunize himself by such delegation. The only case plaintiff cites for this argument is *Reilly v. Blue Cross & Blue Shield United of Wisconsin*, 846 F.2d 416 (7th Cir.1988):

Based on the district court's analysis, Blue Cross could immunize itself from liability for its decisions as a plan administrator simply by creating a plan which provides that it will deny claims for medical procedures if Blue Cross' internal advisory committees deem them experimental. ERISA's provisions do not permit such potential abuses; decisions and their rationales are reviewable. In this case, the reasonableness of the decision to characterize IVF as experimental is ultimately Blue Cross' responsibility.

*Id.* at 423. The facts in *Reilly* are not the same as those before this Court, and plaintiff does not attempt to reconcile them. *Reilly* concerned a challenge to a plan administrator's reliance on the recommendation of its own obviously interested medical advisory committee and its national association. The Seventh Circuit reversed the lower court grant of summary judgment on the basis of issues of fact.

■ This Court agrees with the Seventh Circuit that a plan administrator cannot be given discretion to interpret a plan and avoid fiduciary duties. The distinction between *Reilly* and the case at hand is that the Boeing plan unambiguously relies on a classification produced by an independent third party. This then is the difference between a plan sponsor delegating decision making to a third party (*e.g.* the plan administrator), which makes the third party a fiduciary; and the sponsor relying on a classification adopted by an independent body which has no duty to either the plan sponsor or the plan administrator. National Blue Cross is not interpreting the Boeing plan.

■ Defendants' reliance on a classification by national Blue Cross, which has no contractual relationship with the sponsor and plan administrator nor with the claims administrator, is a reliance without any conflict of interest. Thus the classification of experimental service by national Blue Cross would be entitled to an abuse of discretion standard if viewed in the same way as the plan administrator's decision.

■ This Court, however, concludes that the standard of review to be applied is the one defendants suggest. The design of the plan is a ministerial act, and the sponsor is not a fiduciary under ERISA when setting

up its terms. The Court reviews de novo the wording of the Plan just as it would any contract or trust document to determine its meaning.[5] The Court then is reviewing the meaning of the plan document's reliance on a classification by a completely independent party with no fiduciary relationship to the beneficiaries of the plan. The Court is not reviewing under any standard the reasonableness of the classification by national Blue Cross.

Thus under a de novo standard, the Court examines the plain wording of the plan. The collectively bargained for plan unambiguously relies on the classification of experimental-investigatory by national Blue Cross. This is not a delegation of discretion to construe the plan. The Court will not go behind the document to determine if this classification was proper.

## SUMMARY

██ Under the terms of the stipulated preliminary injunction entered April 6, 1992, defendants will cover Mrs. Boland's treatment so that it can proceed expeditiously. The primary issue before this Court is which party will have "the final obligation for payment or for reimbursement for payment...." CP 21, at 2.

This Court cannot determine on a motion for summary judgment that HDC with ABMT "is not generally recognized by the medical profession as tested and accepted medical practice."

This Court can, however, determine as a matter of law that the medical plan fully funded by Boeing and adopted pursuant to a collective bargaining agreement unambiguously relies on a third party classification of what is "experimental."

THEREFORE, the summary judgment motion of defendants the Boeing Company and King County Medical Blue Shield is GRANTED, and this case is DISMISSED.

---

**5.** The United States Supreme Court has pointed to the way in which trust provisions generally will be interpreted:

As they do with contractual provisions, courts construe trust agreements without deferring to either parties' interpretation....
*Firestone,* 489 U.S. at 112, 109 S.Ct. at 955.