**Ernest L. AKERS, et al.,
Plaintiffs–Appellants,**

**v.**

**Valfrid E. PALMER; Alco Gravure
Industries, Inc., et al.,
Defendants,**

**Donald H. McKinnon, Defendant–
Appellee.**

**Nos. 94–5740, 94–5743.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 6, 1995.

Decided Dec. 11, 1995.

T. H. Freeland, IV (argued and briefed), T. H. Freeland, III, Freeland & Freeland, Oxford, MS, for plaintiff-appellant.

Robert M. Glover, Memphis, TN, Kathleen M. Kundar (argued and briefed), Fox & Horan, New York City, Alan Kanzer, Walter, Conston, Alexander & Green, New York City, for defendants-appellees.

Before: LIVELY, RYAN, and SILER, Circuit Judges.

RYAN, Circuit Judge.

This is a consolidated appeal of two cases brought under the fiduciary provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1104 and 1106(b) (ERISA). Plaintiffs challenged certain corporate board actions leading to the creation and initial funding of an Employee Stock Ownership Plan (ESOP) for the benefit of the employees of Alco Gravure, Inc. (Alco). Plaintiffs claimed that Alco's founding board members engaged in self-dealing by purchasing all of the company's outstanding shares of common stock at a price well below the stock's market value, while making the initial contributions to the ESOP with shares at their fair market value. Plaintiffs characterized the initial funding decision as a breach of fiduciary duty under ERISA, because when the company was sold some seven years after its creation, the founding stockholders made a substantial profit on their investment, while the ESOP only doubled its money.

The district court granted summary judgment against plaintiffs for failure to state a claim under ERISA, because the transactions challenged were not fiduciary acts covered by the statute. We agree, and for the reasons explained below, we AFFIRM the district court's judgment.[1]

## I.

This case arose as a result of the sale of Alco to Maxwell Communications, Inc. on January 12, 1988. Alco is a Delaware Corporation which was organized in March 1981. Its eleven founding members established the company by purchasing all of its 2,600 outstanding shares at $60 per share. It appears that the fair market value of the stock at the time of the purchase was somewhat over $10,000 per share.

Alco is a wholly-owned subsidiary of Alco Gravure Industries, Inc. (Alco Industries). Through a merger in May 1981, Alco Industries acquired a printing company owned by Macmillan, Inc., which eventually became Alco. Under Alco's purchase plan and as a condition to the financing, the primary financing bank required the company to form an ESOP. Accordingly, one month after the acquisition of Alco, the board established an ESOP through a written plan, the details of which were faithfully followed by an ESOP committee.

The exclusive source of contributions to the new ESOP was to be newly-issued Alco stock priced at its fair market value. An independent appraiser was to valuate the stock in compliance with the requirements of the Internal Revenue Code. The fair market value of Alco shares at the time of the creation of the trust was over $10,000 per share.

A written agreement set forth all of Alco's rights and obligations with respect to the ESOP. The relevant sections state:

1) Section 4.02: Employer Contributions may be paid to the Trustee in such amounts ... as may be determined by the ... Board of Directors.... [There is no requirement of notification to beneficiaries under the plan of the amount, if any, of contribution]....

2) Section 5.04: The Committee may direct the Trustee to sell or resell shares of Company Stock to any person [for no less than the shares' fair market value]....

3) Section 11.05: This Plan will be administered by a Committee composed of three (3) individuals ... appointed by the Board of Directors....

Because we find that plaintiffs failed to state a claim under ERISA, we need not address procedural issues before this court.

---

1. Plaintiffs also appealed the district court's dismissal of their complaint for failure to plead fraud with particularity, and the court's denial of relief from judgment under Fed.R.Civ.P. 59(e).

4) Section 12.03: The Company shall have the right at any time to terminate the Plan and the Trust created concurrently herewith....

Historically, the board decided, after the close of the company's fiscal year, whether to make contributions to the ESOP. The result was that the decision whether to contribute for the previous year was not made until February of the following year.

Alco made the first contribution to the ESOP in February 1982; it contributed 288 shares valued at $2,491,200. The company continued making contributions to the trust every year through 1986, but it made no contributions to the plan for the year 1987. Alco was sold to Maxwell Communications in 1988 and the company terminated the ESOP as a condition of the sale.

Plaintiffs originally brought their claim against Alco, its Board of Directors, and certain of its shareholders. All the defendants, except Donald McKinnon, were dismissed for failure to serve process or because the statute of limitations expired. Plaintiffs did not appeal this decision of the district court. Thus, the only remaining defendant for purposes of this appeal is McKinnon, a founding board member of Alco and a former member of the ESOP Committee.

The district court granted defendant McKinnon's motion for summary judgment because it concluded that in creating, funding, and/or terminating the ESOP, defendants were not acting in a fiduciary capacity. The court found that settlor functions are not covered by ERISA, and that the Act does not apply to business decisions to amend or terminate a plan.

## II.

■ This court reviews a grant of summary judgment *de novo* using the same test used by the district court. *Brooks v. American Broadcasting Cos.*, 932 F.2d 495, 500 (6th Cir.1991). Summary judgment is proper when in viewing all the evidence in the light most favorable to the nonmoving party, the court concludes that there are no genuine issues of material facts and therefore the moving party is entitled to judgment as a

matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988).

## III.

We confess to being unable to understand the precise legal theory of the plaintiffs' claim. Ernest Akers challenges the initial funding of the ESOP with shares that were appraised at their fair market value by an independent appraiser. It appears that plaintiffs' contention is that the board of Alco should have funded the ESOP with shares valued at $60 per share, rather than at their market value of $10,000 per share. Indeed, Akers argues that it amounted to self-dealing, and thus a breach of fiduciary duty under ERISA, for the founders to have made a "geometric" return on their investment, while the ESOP "merely doubled its money." He makes this argument in the context of the sale of Alco seven years after the company's establishment of an ESOP. No matter how framed, plaintiffs' arguments failed to state an actionable claim under ERISA.

■ ERISA is designed to accomplish many worthwhile objectives, but the regulation of purely corporate behavior is not one of them. Rather, ERISA is a comprehensive, complex remedial statute designed to "protect ... the interests of participants in employee benefit plans and their beneficiaries, ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). Its underlying purpose is the " 'enforcement of strict fiduciary standards of care in the *administration* of all aspects of pension plans and promotion of the best interests of participants and beneficiaries.' " *Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154, 1162 (6th Cir.1988) (emphasis added) (citation omitted). In this case, there is no allegation that Alco breached its duties to the beneficiaries in its administration of the ESOP.

Both in its brief and at oral argument, plaintiffs asserted that Alco breached its fiduciary duty by "causing the ESOP to purchase" stock at its fair market value, rather than at the favorable rate of $60 per share. We find this argument strained, disingenuous, and wholly meritless. The ESOP did not "purchase" anything, and plaintiffs offered no evidence other than their own assertions to support their claim. Rather, the shares transferred to the fund served as an initial contribution, giving the ESOP benefits worth over $2,400,000. The trust acquired no debt to obtain the shares, nor were there any plan "assets" used to "purchase" the shares. To be sure, the shares themselves constituted the original plan assets. They were, in essence, a gift from the employer to the employees.

■ Plaintiffs would have this court apply ERISA to company actions *prior* to the creation of an employee benefit plan. We have found no authority, nor have plaintiffs offered any, to support such an extension of ERISA. Not every decision affecting a benefits plan is subject to ERISA's fiduciary rules. *Bryant v. Food Lion, Inc.,* 774 F.Supp. 1484, 1491 (D.S.C.1991). Because an employer has no affirmative duty to create a benefits plan for its employees, *Moore v. Reynolds Metals Co. Retirement Program,* 740 F.2d 454, 456 (6th Cir.1984), *cert. denied,* 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985), only actions respecting the *administration* or *management* of plan "assets" are subject to fiduciary standards. *See Musto v. American General Corp.,* 861 F.2d 897, 911 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). That is, a company is only subject to fiduciary restrictions when managing a plan according to its terms, but not when it decides what those terms are to be. *Id.* ERISA is simply not involved in regulating conduct affecting the establishment of a plan or with its terms. *Moore,* 740 F.2d at 456. "In particular, courts have no authority to decide which benefits employers must confer upon their employees ...," *id.,* or to review a plan's provisions for reasonableness. *Sutter v. BASF Corp.,* 964 F.2d 556, 562 (6th Cir. 1992). Rather, these decisions should be left to the marketplace or to federal legislation.

*Moore,* 740 F.2d at 456. Simply put, "'ERISA's concern is with the elements of a plan and its administration *after* it has been established....'" *Musto,* 861 F.2d at 912 (emphasis added) (citation omitted).

■ Additionally, plaintiffs' assertions that the ESOP should have been funded with shares valued at $60 would also require this court to pass on the level of benefits conferred upon Alco employees. Manifestly, we have no authority to do so. *Moore,* 740 F.2d at 456. The reasonableness of terms comprising an ESOP is left solely to the discretion of the employer. *See Sutter,* 964 F.2d at 562. Congress chose to carve out a range of transactions in which the employer may engage without being subject to ERISA liability; the creation of a trust fund and the designation of level of benefits are two of those transactions. Whatever Tennessee corporate law might have to say about the type of transaction involved in the purchase of Alco might be an interesting topic for exploration; however, it is neither the purpose nor the domain of ERISA to regulate purely corporate behavior that is adequately covered elsewhere.

■ Plaintiffs characterize the actions of Alco's board as fiduciary because the board benefitted itself "at the expense" of the trust beneficiaries. This characterization is erroneous both in law and in fact. To state that someone is a fiduciary is a legal conclusion to be determined by a trier of fact. That McKinnon was a founding member of Alco and that he voted to create an ESOP with 288 shares valued at their fair market value does not make him a fiduciary. A party does not become a fiduciary simply by a litigant's assertion that this is the case. The scope of ERISA's fiduciary duties is outlined in sections 1104 and 1106, which provide in relevant part:

(a)

(1) ... [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man ... would use in the conduct of [a similar] enterprise ...;

§ 1104(a)(1). These provisions encompass a "carefully tailored law of trusts." *Eaves v. Penn,* 587 F.2d 453, 457 (10th Cir.1978). Section 1106, in turn, prohibits certain transactions between a plan and a party in interest or a fiduciary.

In turn, section 1002(21)(A) defines a fiduciary as one who "exercises any discretionary authority or ... control respecting management of [a] plan, or ... disposition of its assets"; and who "has any discretionary authority or ... responsibility in the administration of [a] plan." 29 U.S.C. § 1002(21)(A)(i), (iii).

In concluding that the defendant was not a fiduciary as that term is defined in section 1002(21)(A) of ERISA, the district court found that McKinnon did not sell anything to the ESOP, and did not use any trust "assets" for his own benefit. Indeed, when the board voted to acquire shares at $60 and to establish an ESOP, by definition, the ESOP had no assets—the plan did not exist. In fact, it would not be created until at least one month after the acquisition of Alco. Thus, plaintiffs' characterization of the board's actions as self-dealing based on ESOP assets and beneficiaries' interests in those assets is plainly inaccurate.

Alco's decision to establish an ESOP and to fund it with newly-issued stock was the act of a settlor, immune from scrutiny under Title I of ERISA. This is the case even where there are conflicts between the employer's interests and those of the potential beneficiaries. Competing concerns will always arise between the creators of a plan and the interests of potential beneficiaries. However, "[i]f these competing concerns give rise to a fiduciary duty, ... the distinction ... the law makes between settlor and fiduciary functions would be obliterated...." *Bryant,* 774 F.Supp. at 1493.

 It is therefore perfectly consistent for an employer to wear "two hats" and act both as a fiduciary and as an employer without breaching fiduciary duties. "ERISA does not require that day-to-day corporate business transactions, which may have a collateral effect on prospective, contingent employee benefits, be performed solely in the interest of plan participants." *Adams v. Avondale Indus., Inc.,* 905 F.2d 943, 947 (6th Cir.), *cert. denied,* 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990) (internal quotations and citations omitted).

The cases plaintiffs cite to support their position are simply inapposite. Most of the cases concern transactions involving an already established trust fund governed by ERISA. Others involve purely corporate law concepts of self-dealing and breach of fiduciary duty to the shareholders of a corporation. Plaintiffs advance no authority justifying extending ERISA fiduciary standards to govern the conduct of a company in its decision as to whether and on what terms it should create an employee benefit plan.

 Finally, because plaintiffs collapse the sale of the ESOP shares to Maxwell Communications in 1988 into the purchase of Alco in 1981, it is unclear under what theory they allege that the termination of the ESOP was a breach of fiduciary duty. Regardless, ERISA's fiduciary restrictions are also inapplicable to Alco's decision to terminate the ESOP. This is considered to be a "pure business decision." *See Sutter,* 964 F.2d at 562; *see also Adams,* 905 F.2d at 947. Alco's board explicitly reserved to itself the discretion to direct the trustee of the ESOP to sell the plan's shares when necessary. That the founders made a "geometric" return on their investment is irrelevant. A "company ... is entitled to determine without judicial interference the amount of money it desires or can afford to appropriate," if any, to an employee benefit plan. *Moore,* 740 F.2d at 456 n. 3. An employer may thus unilaterally terminate a plan governed by ERISA without violating the Act. *See Adams,* 905 F.2d at 948.

## IV.

We conclude that none of the actions of which plaintiffs complain is a fiduciary act under ERISA. Because the decision to create an ESOP and fund it with newly-issued stock is a settlor function, and because the decision to terminate the plan was purely a business decision, the plaintiffs failed to state an actionable claim under ERISA, and therefore McKinnon is entitled to judgment as a matter of law. We therefore **AFFIRM** the district court's judgment.