Robert B. REICH, Secretary of the United States Department of Labor,[1] Plaintiff,

v.

HALL HOLDING COMPANY, INC., et al., Defendants.

No. 1:94CV2236.

United States District Court, N.D. Ohio, Eastern Division.

Jan. 9, 1998.

Memorandum Granting Reconsideration March 10, 1998.

1. On September 23, 1997, the Department of Labor substituted Alexis M. Herman for Robert B. Reich as the current Secretary of Labor and plaintiff in this action. (Doc. 71)

Glenn M. Loos, Department of Labor, Alexander Fernandez, Susan M. Greene, U.S. Department of Labor, Washington, DC, for Alexis M. Herman, Secretary of Labor, United States Department of Labor a/k/a Robert B. Reich, plaintiff.

Anthony J. DiVenere, Sr., McDonald, Hopkins, Burke & Haber, Cleveland, OH, Edward A. Scallet, Katherine S. Kamen, LeBouef, Lamb, Green & McRae, Washington, DC, for Hall Holding Company, Inc., David L. Goldman, Kathleen A. Keating, Goldman Financial Group, Inc.

Thomas Jeffrey Piatak, Arter & Hadden, Michael J. Frantz, Thompson, Hine & Flory, Cleveland, OH, for George A. Ahearn.

Thomas Jeffrey Piatak, Arter & Hadden, Michael J. Frantz, Thompson, Hine & Flory, Cleveland, OH, Anthony J. DiVenere, Sr., McDonald, Hopkins, Burke & Haber, Cleveland, OH, Edward A. Scallet, Katherine S. Kamen, LeBouef, Lamb, Green & McRae, Washington, DC, for Michael F. Shields.

## MEMORANDUM AND ORDER

ALDRICH, District Judge.

This action arises under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq.*, as amended. The Secretary of the United States Department of Labor (the "Secretary") is suing Hall Holding Company, Inc., David L. Goldman, Kathleen A. Keating, George P. Ahearn, Michael F. Shields, and Goldman Financial Group, Inc. ("defendants") for allegedly violating various provisions of ERISA. The Secretary claims that the defendants breached their duties as fiduciaries by purchasing stock on behalf of an employee stock ownership plan ("ESOP") for more than adequate consideration as defined by ERISA. The defendants have moved for summary judgment, or in the alternative, partial summary judgment (doc. 54), and the Secretary has moved for partial summary judgment (doc. 59). Both motions are opposed. For the following reasons, this Court denies both motions.

### I.

ERISA is a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). ERISA regulates employee benefit plans, in part, by establishing strict standards of conduct, responsibilities and obligations for fiduciaries of the plans. 29 U.S.C. § 1001(b). A type of plan covered by the provisions of ERISA is an employee stock ownership plan ("ESOP").

"An ESOP is a type of ERISA plan that invests primarily in the stock of the employer creating the plan." *Roth v. Sawyer–Cleator Lumber Co.*, 16 F.3d 915, 917 (8th Cir.1994); *see also* 29 U.S.C. § 1107(d)(6). ERISA governs the creation, maintenance and administration of ESOPs through a number of somewhat complex and interrelated rules. An employer desiring to create an ESOP is required to execute a written document to define the terms of the plan and the rights of the beneficiaries under it. 29 U.S.C. § 1102(a). This plan must also name one or more fiduciaries who are "to control and manage the operation and administration of the plan." *Id.* A trust is established to hold the assets of the ESOP. 29 U.S.C. § 1103(a). An ESOP's assets are often derived from tax-deductible contributions from the employer to the plan in the form of the employer's own stock or cash. If cash is contributed, the ESOP then purchases stock in the sponsoring company. An ESOP may also borrow money from a third party in order to invest in the employer's stock. 29 U.S.C. § 1108(b)(3). This type of ESOP is called a leveraged ESOP and is the type of ESOP at issue in the present case. If a leveraged ESOP is created, the employer is obligated to make cash contributions to the ESOP, which in turn uses the cash to retire the loan debt. *Donovan v. Cunningham*, 716 F.2d 1455, 1459 (5th Cir.1983). In the present case, after the ESOP borrowed money for the amount of the stock purchase, the stock was placed in a "suspense account." As the ESOP makes loan payments using the cash contributions from the corporate sponsor, stock is released from the suspense account and placed into the ESOP participants' individual accounts.

Defendant Goldman Financial Group, Inc. ("GFGI") is a corporation which manages several different businesses, including Hall Chemical Company ("Hall Chemical"). GFGI owns Hall Chemical through the defendant Hall Holding Company, Inc. ("Hall Holding"), a holding company and subsidiary of GFGI. Hall Holding's primary asset is Hall Chemical.

During the relevant time period, defendant David L. Goldman ("Goldman") was chairman and president of GFGI. He was also the sole member of the Board of Directors of Hall Chemical, as well as the sole director of Hall Holding. Goldman authorized the establishment of the Goldman Financial Group, Inc. Master Trust ("Master Trust"), which is a trust containing assets of several ERISA-

covered plans sponsored by GFGI and/or its affiliates.

Since May of 1989, defendant Kathleen A. Keating ("Keating") has been the Director of Human Resources for GFGI. In September of 1990, she also directed the Master Trust trustee on how to invest the assets held in the Master Trust.

Defendant George P. Ahearn ("Ahearn") was the president and chief operating officer of Hall Chemical from July 1988 until he was terminated in July 1991. Defendant Michael F. Shields ("Shields") acted as Hall Chemical's vice president of finance and chief financial officer from June 1988 through June 1992.

In August of 1990, GFGI, acting primarily through Keating and GFGI's outside ERISA counsel, James Shumaker, began designing a new ESOP for the employees of Hall Chemical. GFGI decided to create a leveraged ESOP. The ESOP, upon being established, would borrow money which it would use to purchase qualifying employer securities. GFGI paid James Cunningham, a person whom Keating and other GFGI officials believed to be well-qualified, to perform a valuation of Hall Chemical stock.

Approximately four months earlier, Cunningham, while still a partner at an investment banking firm named First Boston Corporation, had been involved in a valuation of Hall Chemical for purposes unrelated to the ESOP. Not surprisingly, the results of Cunningham's valuation report were consistent with those of First Boston. On September 5, 1990, based upon information provided by GFGI, Cunningham concluded that the estimated value of Hall Chemical excluding net debt was $32.4—$37.4 million.

At the time GFGI retained Cunningham, Keating and other GFGI officials believed the ESOP would purchase Hall Chemical stock. However, after Cunningham had completed his valuation of Hall Chemical, it was decided that the ESOP should purchase stock in Hall Holding, the company which owned Hall Chemical. Considering that Hall Chemical was Hall Holding's primary asset, GFGI officials believed it was appropriate to rely on Cunningham's valuation of Hall Chemical to determine the value of Hall Holding. GFGI officials established the val-ue of all Hall Holding stock at $35 million, which is the approximate mid-point of Cunningham's estimated range. Based on this $35 million figure, Goldman, in his capacity as sole director of the seller (Hall Holding), agreed that Hall Holding would sell 9.9% of its stock (110 shares) to the ESOP in exchange for $3.5 million.

After the terms of the loan needed to finance the above-described stock purchase were reviewed and discussed, Keating, after consulting with Shumaker, determined that the ESOP, after its establishment, could borrow money from the Master Trust in the amount of $3.5 million, the appropriate purchase price of the 110 Hall Holding shares as determined by GFGI officials. The trustee of the Master Trust, Boston Safe Deposit and Trust Company ("BSDT"), although it had initial concerns regarding the relationship between the parties (the Master Trust held assets of other GFGI-related plans), ultimately agreed to the transaction.

Finally, in September of 1990, the ESOP for the employees of Hall Chemical was established. The ESOP is entitled the Hall Chemical Company, Inc. Employee Stock Participation Plan ("Hall ESPP"). On September 12, 1990, Goldman, in his capacity as sole director of Hall Holding, appointed Ahearn and Shields as members of the Hall ESPP Committee, which serves as Plan Administrator for the Hall ESPP. According to the Hall ESPP Plan Document, the Plan Administrator has the authority to control and manage the operation and administration of the ESPP. Ahearns and Shields also acted as trustees of the Hall ESPP from September 1990 through April 1991.

On September 18, 1990, Keating, on behalf of GFGI, directed BSDT to loan $3.5 million from the Master Trust to the Hall ESPP. On that same day (according to the date on the promissory note), Ahearn and Shields, as trustees of the Hall ESPP, signed the promissory note containing the terms previously established by Keating and other GFGI representatives. On September 20, the loan was approved.

On September 21, 1990, after the Hall ESPP received the $3.5 million in loan proceeds, Ahearn and Shields signed a subscription which "consummated [the stock

purchase] in accordance with GFGI's prior decisions by purchasing 110 shares, or 9.9%, of Hall Holding stock at a price of $3.5 million." Memorandum in Support of Defendants' Motion for Summary Judgment at 12. Upon purchase, the 110 shares of Hall Holding stock were placed in a "suspense account" to be released as the loan payments were made. Hall Chemical was responsible for making cash contributions to the Hall ESPP, who, in turn, was to use the contributions to make the loan payments. As the Hall ESPP made loan payments using the cash contributions from Hall Chemical, the Hall Holding stock was to be released from the suspense account and placed into the Hall ESPP participants' individual accounts.

The defendants have moved for summary judgment claiming that their decisions challenged by the Secretary were corporate or "plan sponsor" decisions, not fiduciary decisions subject to ERISA's fiduciary standards. In the alternative, the defendants move for partial summary judgment on the ground that the ESOP and its participants have suffered no loss as a result of the defendants' alleged fiduciary breaches. The Secretary of Labor has moved for partial summary judgment based on the argument that the defendants caused the Hall ESOP to engage in a prohibited transaction in violation of § 406 of ERISA, specifically 29 U.S.C. § 1106(a)(1)(A) and (D).[2] The alleged prohibited transaction was the purchase of Hall Holding stock for more than adequate consideration. The Court will first address the defendants' motion.

## II.

### A. Sponsor/Fiduciary Distinction

■ The defendants argue that they are entitled to summary judgment because the conduct which the Secretary is challenging, the stock purchase and related loan transaction, is simply not within the purview of ERISA's fiduciary provisions. The defendants argue that their decisions regarding the ESOP's purchase of Hall Holding stock and loan transaction with the Master Trust were corporate decisions, *not* fiduciary decisions subject to ERISA's fiduciary standards.

■ ERISA recognizes the symbiotic relationship between the employer, or plan "sponsor," and its employee benefits plan. For example, § 408(c)(3) allows officers, employees and other representatives of an employer or other party in interest to serve as fiduciaries to a plan. Moreover, ERISA § 3(21)(A), which defines the term fiduciary, limits the scope of a fiduciary's responsibilities by using the phrase "to the extent."[3] This limiting language releases the employer or employer's representatives, who are also fiduciaries to a plan, from the fiduciary standards of care and loyalty when they are acting in their corporate capacities, rather than in their fiduciary roles.

The Sixth Circuit has respected the necessary distinction between fiduciaries and sponsors. "[W]hen an employer decides to establish, amend, or terminate a benefits plan, as opposed to managing any assets of the plan and administering the plan in accordance with its terms, its actions are not to be judged by fiduciary standards." *Musto v. American General Corp.*, 861 F.2d 897, 912 (6th Cir.1988). The defendants in the present case argue that their actions and decisions surrounding the loan transaction and stock purchase should not be judged under ERISA's fiduciary standards because the loan and stock transactions were part of the *establishment* of the Hall ESPP. In making this argument, the defendants rely heavily on

---

**2.** The Secretary has not moved for summary judgment on the defendants' alleged violation of ERISA § 404(a)(1) in connection with the stock purchase, nor is the Secretary seeking summary judgment on the defendants' alleged violations of §§ 404 and 406 in connection with the loan transaction between the Hall ESPP and the Master Trust.

**3.** Section 3(21)(A) provides:
[A] person is a fiduciary *to the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such

plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.
29 U.S.C. § 1002(21)(A) (emphasis added).

the recent Sixth Circuit decision in *Akers v. Palmer*, 71 F.3d 226 (6th Cir.1995), cert. denied, 518 U.S. 1004, 116 S.Ct. 2523, 135 L.Ed.2d 1048 (1996).

In *Akers*, the plaintiffs challenged certain corporate board actions leading to the creation and initial funding of an ESOP for the benefit of the employees of Alco Gravure, Inc. ("Alco"). The plaintiffs claimed that the founding board members engaged in self-dealing and violated their fiduciary duties by purchasing all of Alco's outstanding shares of common stock at a price well below the fair market value, and then initially funding the ESOP with contributions of those same shares at their fair market value. When Alco was sold several years after the creation of the ESOP, the founding stockholders made a very large profit on their investment, while the ESOP merely doubled its money.

The Sixth Circuit rejected the plaintiffs' argument that the board members violated their fiduciary duties explaining that "a company is only subject to fiduciary restrictions when managing a plan according to its terms, but not when it decides what those terms are to be. ERISA is simply not involved in *regulating conduct affecting the establish-ment of a plan or with its terms.*" *Akers*, 71 F.3d at 230. The *Akers* Court held that the corporate board members' actions in funding the ESOP were not fiduciary actions, but rather purely corporate or "sponsor/settlor" actions. The defendants in the present case strenuously argue that their actions, like those of the board members in *Akers*, were sponsor actions not subject to the fiduciary provisions of ERISA.

Contrary to the defendants' claims, however, *Akers* is readily distinguished from the present case. Unlike the situation before this Court, the ESOP in *Akers* "acquired no debt to obtain the shares, nor were there any plan 'assets' used to 'purchase' the shares. To be sure, the shares themselves constituted the original plan assets. They were, in essence, a gift from the employer to the employees." *Id.* at 230. In the present case, immediately following its creation, the Hall

ESPP acquired a debt of $3.5 million in loan money, which it then used to purchase the Hall Holding shares. The Hall ESPP's original plan assets were the 3.5 million dollars in loan money. Under the plain language of ERISA, the fiduciary provisions apply to the defendants' conduct regarding the ESOP's loan transaction and stock acquisition because "a person is a fiduciary to the extent ... he exercises any authority or control respecting management or disposition of [a plan's] assets." 29 U.S.C. § 1002(21)(A). Furthermore, in the specific context of an ESOP's purchase of employer securities, ERISA explicitly requires the plan's fiducia-ries to ensure that the stock is purchased for "adequate consideration" by conducting an independent investigation to determine the fair market value of the to-be-acquired secu-rities. 29 U.S.C. §§ 1002(18) and 1108(e); *Donovan*, 716 F.2d at 1467. Finally, the *Akers* court itself held that "actions respect-ing the *administration or management of plan 'assets'* are subject to fiduciary stan-dards." *Akers*, 71 F.3d at 230 (emphasis added); *see also Kuper v. Iovenko*, 66 F.3d 1447, 1458 (6th Cir.1995) ("ERISA imposes high standards of fiduciary duty upon those responsible for administering an ERISA plan and *investing and disposing of its assets.*") (emphasis added). Therefore, this Court re-jects the defendants argument that their ac-tions surrounding the financing and purchase of Hall Holding stock by the Hall ESPP are not subject to the fiduciary provisions of ERISA,[4] and summary judgment on that ground is denied.

### B. *No Loss Argument*

 In the alternative, the defendants as-sert that even if they were subject to the fiduciary provisions of ERISA, and even if they violated those provisions, they are enti-tled to partial summary judgment with re-spect to the relief available. The defendants argue that, in order to be awarded monetary relief, the Secretary must prove that the participants suffered a loss as a result of the defendants' alleged breaches of fiduciary

---

4. The defendants also argue that a necessary corollary of the sponsor/fiduciary distinction is that trustees who merely execute plan sponsor design determinations are not subject to ERISA's fiduciary provisions. However, as discussed above, determining the appropriate disposition and management of an ESOP's assets, which is the activity primarily challenged in this case, is a function of the ESOP's fiduciaries, *not* the ESOP's sponsor.

duty with regard to the loan and stock purchase. The defendants cite ERISA § 409, which provides that "a fiduciary . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109. In making this assertion, the defendants essentially argue that Hall Chemical's cash contributions to the Hall ESPP, which were used to pay off the Hall ESPP's debt resulting from the stock purchase, were gifts—nothing was given up by the ESOP participants in exchange for the Hall Holding stock. The Court finds these arguments indefensible as a matter of law, and denies summary judgment on this ground.[5]

The defendants' argument that the participants suffered no loss because the contributions were gifts ignores the fact that the Hall ESPP, which the defendants created, provides a form of deferred compensation to the plan's participants. The Hall ESPP's own governing plan indicates this fact. The plan document explicitly disallows any and all contributions to the ESOP from Hall Chemical that are non-deductible. Plan Document § 1.2. Section 404(a) of the Internal Revenue Code allows an employer to deduct contributions to tax-qualified retirement plans to the extent that they are "ordinary and necessary business expenses during the taxable year in carrying on the trade or business or for the production of income *and are compensation for personal services actually rendered.*" 26 C.F.R. § 1.404(a)–1(b)(emphasis added). Therefore, since the defendants conditioned all ESOP contributions on their deductibility as compensation for the participants' services to the company, and took advantage of such deductions, the defendants may not now argue that Hall Chemical's contributions were gifts. Rather, the contributions must be viewed as a form of deferred compensation. To assume otherwise would be tantamount to a decision that the defendants have improperly withheld a large amount of tax revenue from the federal government.

Because Hall Chemical employees earned the ESOP contributions from Hall Chemical by performing services for Hall Chemical, the employees suffered a loss if the stock

purchased by the ESOP was worth less than the full value of those contributions. In other words, if the Hall Holding stock was not worth what the ESOP paid for it, the ESOP and its participants suffered a loss under ERISA § 409.

██ The defendants state that if they had taken the position that the 110 shares of Hall Holding stock were only worth $918,000, as the Secretary's expert opines was the true value of the shares when purchased, only three alternative outcomes could have occurred. First, Hall Holding would have refused to sell at that price, leaving the ESOP participants with nothing and thereby placing the participants in a worse position than they are now. In making this argument, the defendants fail to acknowledge "the fact that while an employer is under no obligation to establish an ESOP, once it does so ERISA's fiduciary standards apply." *Valley Nat'l Bank*, 837 F.Supp. at 1287. As explained previously, because the loan money received by the Hall ESPP constituted plan assets, the defendants' decision to invest those assets was subject to ERISA's fiduciary standards. The defendants may not be relieved of their fiduciary duty to obtain adequate consideration for the Hall Holding stock by virtue of the fact that if they had not agreed to buy the stock for less than adequate consideration, Hall Holding would not have sold its stock. To hold otherwise would be contrary to § 410(a) of ERISA which forbids any agreement "which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation or duty . . . [as] void as against public policy." 29 U.S.C. § 1110(a). *See also Valley Nat'l Bank*, 837 F.Supp. at 1288 (employer cannot condition plan contributions on a violation of ERISA because ERISA § 410(a) forbids such an agreement).

██ The defendants' second and third projected outcomes appear to demonstrate a misunderstanding of the concept of fair market value. The second scenario suggested by the defendants is that if, in the unlikely event Hall Holding had agreed to sell 110 shares of its stock to the Hall ESPP for only $918,000,

---

5. The Court further discusses the issue of loss in its analysis of the Secretary's motion for partial

summary judgment.

instead of the \$3.5 million actually paid, the participants would somehow be left with less benefits than they presently have.[6] However, the value of the 110 shares today is not dependent upon the original purchase price of those shares in 1990. Rather, the present value of the shares depends on their present fair market value.

The third suggested outcome completely puzzles this Court. The defendants hypothesize that they could have insisted on purchasing three times the amount of stock actually purchased, or 330 shares, in exchange for \$3.5 million. The defendants argue that this would have left the ESOP precisely in the same position as it is today—holding stock worth a total of \$3.5 million. Clearly, however, if the present fair market value of 110 shares of stock is \$3.5 million,[7] then the present fair market value of 330 shares of stock would be considerably higher, three times higher to be precise.

In sum, this Court rejects the defendants' characterization of the ESOP cash contributions as gifts, and finds that the defendants have misconstrued portions of ERISA and the concept of fair market value in arguing that the ESOP and its participants have suffered no loss. The Court denies partial summary judgment on this ground and holds that if the ESOP purchased stock that was worth less than the full value of the contributions, the ESOP and its participants suffered a loss.

### III.

The Secretary has moved for partial summary judgment based on the argument that the defendants, as fiduciaries, caused the Hall ESOP to engage in a prohibited transaction in violation of § 406 of ERISA, specifically 29 U.S.C. § 1106(a)(1)(A) and (D). The prohibited transaction allegedly caused by the defendants was the ESOP's purchase of Hall Holding stock for more than adequate consideration.

Section 406 of ERISA lists several transactions that are specifically prohibited and

illegal *per se* because of their high potential for abuse. *Donovan,* 716 F.2d at 1464–1465. The prohibited transactions of relevance to the present case are a "sale or exchange, or leasing, of any property between the plan and a party in interest" and a "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(A) and (D). A "party in interest" includes any fiduciary, employer of employees covered by the plan, or employee, officer or director of such employer. 29 U.S.C. § 1002(14). Therefore, the purchase of employer securities by a plan is a prohibited transaction under § 406 because of the high risk of self-dealing.

However, because Congress did not wish to prohibit employers from providing their employees with the opportunity of owning a portion of their employers' stock, § 408 of ERISA grants ESOPs and certain other ERISA-covered plans a conditional exemption from the prohibited transaction rules for purchase of employer securities. ESOPs may purchase employer securities if the purchase is made for "adequate consideration." 29 U.S.C. § 1108(e). Section 3(18) of ERISA defines "adequate consideration" in the case of assets for which there is no generally recognized market as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." 29 U.S.C. § 1002(18).

The Fifth Circuit in *Donovan v. Cunningham* examined § 408's conditional exemption and how to determine whether fiduciaries purchased securities for "adequate consideration." The *Donovan* court explained that although ESOP fiduciaries are "freed by Section 408 from the prohibited transaction rules, ESOP fiduciaries remain subject to the general requirements of Section 404." *Donovan,* 716 F.2d at 1467; *see also Kuper,* 66 F.3d at 1458 (holding that § 408 exemption for ESOPs do not relieve fiduciaries from the general fiduciary responsibility provisions of § 404). Section 404 imposes three distinct but overlapping duties.[8] ERISA fiduciaries

---

**6.** The defendants state that they have presented the testimony of Robert Fitzpatrick to support this assertion, but the Court is unable to locate such testimony in the record.

**7.** The defendants have presented undisputed evidence that recent independent valuations of Hall

Holding stock are consistent with Cunningham's 1990 final valuation figures.

**8.** Section 404(a)(1) reads in relevant part as follows:

must act "solely in the interest of plan participants and beneficiaries," for the "exclusive purpose" of providing benefits to them, and as a prudent persons would act under the circumstances. *Kuper*, 66 F.3d at 1458. These fiduciary duties have been characterized as "the highest known to law." *Kuper*, 66 F.3d at 1453 (quoting *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1468 (5th Cir.1986)).

■ "[Fiduciaries'] principal responsibility in selecting investments is to act 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Donovan*, 716 F.2d at 1467 (quoting 29 U.S.C. § 1104(a)(1)(B)). The *Donovan* court held that "the ESOP fiduciaries will carry their burden to prove that adequate consideration was paid by showing that they arrived at their determination of fair market value by way of a prudent investigation in the circumstances then prevailing." *Id.* at 1467–1468. The fiduciary's burden of proof is by a preponderance of the evidence. *Valley Nat'l Bank*, 837 F.Supp. at 1272.

Therefore, the question before this Court for purposes of deciding the Secretary's motion for partial summary judgment is whether the defendants, in their capacities as fiduciaries,[9] can prove by a preponderance of the

evidence that they conducted a prudent investigation under the circumstances to determine the fair market value of the stock purchased by the ESOP as required by ERISA § 408(e) and § 3(18).

The defendants argue that they did conduct a prudent investigation to determine the fair market value of the Hall Holding stock. However, the arguments and evidence presented by the Secretary *and the defendants* show that although the defendants were involved to varying degrees in an investigation into the value of the stock, none of the defendants were investigating nor acting *on behalf of the ESOP.* Certainly, the defendants were not acting "solely in the interest of plan participants and beneficiaries" as required by ERISA § 404. Rather, they were acting as employees and representatives of GFGI and/or Hall Chemical.

In fact, the defendants directly state that the ESOP trustees did *not* have "any discretion whatsoever about how to invest the loan proceeds at the establishment of the ESOP," but rather simply carried out "a pre-determined step in an integrated *sponsor-directed* program." Memorandum in Support of Defendants' Motion for Summary Judgment at 19 (emphasis added). Unfortunately for the defendants, as this Court held above, the investment of a plan's assets *is* a fiduciary function, and an ESOP trustee or fiduciary *must,* by statutory definition, have discretion to act in accordance with the best interest of the ESOP and its participants when deciding

---

(1)... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
 (A) for the exclusive purpose of:
 (i) providing benefits to participants and their beneficiaries; and
 (ii) defraying reasonable expenses of administering the plan;
 (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
 \* \* \*
 (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.
29 U.S.C. § 1104(a)(1).

9. The only argument the defendants make to contest the Secretary's position that each defendant is a fiduciary under ERISA is that the actions and decisions of the defendants surrounding the stock purchase were corporate or sponsor actions not subject to ERISA's fiduciary standards. As discussed above, this argument is rejected. The defendants have not otherwise challenged the Secretary's characterization of them as fiduciaries. In fact, the defendants explicitly state that if the Court does reject their sponsor/fiduciary distinction argument, they "are not afraid to argue this case on the Secretary's theory." Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment at 3. Therefore, in light of the defendants' position and this Court's own legal opinion that the defendants were indeed fiduciaries, the Court holds that the defendants were Hall ESPP fiduciaries during the time in question.

if and how to invest the ESOP's assets. *See* 29 U.S.C. § 1104(a)(1); *Cf. Kuper*, 66 F.3d at 1457 ("a fiduciary's argument that he was prohibited from diversifying an ESOP under the terms of the plan was untenable because it was 'inconsistent with ERISA inasmuch as it constrain[ed] the [fiduciary's] ability to act in the best interest of the beneficiaries'") (citing with approval the third circuit's holding in *Moench v. Robertson*, 62 F.3d 553, 567 (3d Cir.1995)). This mandatory fiduciary discretion is particularly important in transactions involving the purchase by an ESOP of its sponsor's securities. Congress clearly intended the fiduciaries' strict duties of care and loyalty to safeguard such transactions from the danger of self-dealing.

In addition to the seeming admission in the defendants' pleadings that no one was acting on behalf of the ESOP when it was determined how much the ESOP would pay for the Hall Holding stock, other evidence exists in the record leading to the same conclusion. For example, Ahearns' and Shields' deposition testimony bolsters the defendants' admission that the trustees did not have discretion about how to invest the plan's assets. Ahearn explained that he did not have any input into the determination of the $3.5 million purchase price; rather, he was informed of the price the ESOP was to pay by Keating. Ahearn Dep. at p. 49 at 3–9, p. 50 at 1–5. Likewise, Shields also does not appear to have had any input into the decision to cause the ESOP to pay $3.5 million for the Hall Holding shares. Shields Dep. p. 91 at 22–25, p. 92–93 at 25, 1–3, p. 94 at 15–18. In fact, Ahearn and Shields did not even know they were appointed as plan administrator; both thought Keating was acting as the plan administrator. Ahearn Dep. p. 35 at 15–23; Shields Dep. p. 51 at 13–16, p. 52 at 2–7. However, Keating made clear in her deposition testimony that she was not acting as plan administrator. Keating Dep. p. 139 at 19–21. Thus, it is clear that no one was analyzing the Cunningham valuation or the final stock price "with an eye single to the interests of the participants and beneficiaries," as is required by ERISA. *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir.), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982).

This Court finds that the defendants, as the ESOP's fiduciaries, did not conduct a prudent and independent investigation to determine the fair market value of the stock purchased by the ESOP. However, this finding alone is not enough to sustain a holding that the defendants violated ERISA § 406. As the Sixth Circuit held in *Kuper*,

> a fiduciary's failure to investigate an investment decision alone is not sufficient to show that the decision was not reasonable. Instead, to show that an investment decision breached a fiduciary's duty to act reasonably in an effort to hold the fiduciary liable for a loss attributable to this investment decision, a plaintiff must show a causal link between the failure to investigate and the harm suffered by the plan.... In order to establish this causal link, a plaintiff must demonstrate that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident.

*Kuper*, 66 F.3d at 1459–60 (citations omitted); *see also Fink v. National Savings & Trust Co.*, 772 F.2d 951, 962 (D.C.Cir.1985) (Scalia, J., concurring in part and dissenting in part) (arguing that where a fiduciary fails to conduct an adequate investigation, he or she is not liable for damages if he or she "happened—through prayer, astrology or just blind luck—to make ... objectively prudent investments").

Therefore, for purposes of deciding the Secretary's summary judgment motion, this Court must decide whether an objective, reasonable fiduciary would have concluded, after conducting a prudent investigation, that $3.5 million was too high a price to pay for 110 shares of Hall Holding stock. A key component of most prudent investigations into the fair market value of closely-held stock is an expert's valuation of the stock. The Secretary argues that the report of her expert, Myron Marcinkowski, conclusively proves that a reasonable fiduciary would not have relied on the Cunningham valuation, and further provides the Court with a valuation on which a reasonable fiduciary could rely, and from which the Court can determine damages. In contrast, the defendants argue, through the testimony of their expert, Karen

Brown, that an objective, reasonable fiduciary could have properly relied on the Cunningham valuation to establish Hall Holding's value at $35 million, and consequently no damages exist.

The Court finds that it is unable to deduce from the record which, if either, party is correct, especially considering that the Court notices probable flaws in both Cunningham's and Marcinkowski's valuations. For example, Marcinkowski's valuation relies in part on the assumption that Hall Holding only owned 95% of Hall Chemical at the time of the stock purchase, when it appears from the defendants' statements that Hall Holding owned 100% of Hall Chemical. Cunningham admits in his deposition that he assumed that he was to value 100% of the Hall Chemical stock; [10] he was unaware of the fact that the ESOP would only be purchasing a minority share of stock. He himself goes on to state that he probably would have applied some sort of minority discount to his calculations had he known of this fact. Cunningham Dep. p. 107 at 11–20.

Therefore, it appears to the Court that there is a genuine issue of material fact as to whether a reasonable fiduciary would have relied on the Cunningham valuation to determine that the fair market value of 110 shares of Hall Holding stock was $3.5 million. Given the existence of this dispute, although the Court holds that the defendants did fail to conduct an independent and prudent investigation to determine the fair market value of the Hall Holding shares, the Secretary's motion for partial summary judgment must be denied at this time.

### IV.

For the foregoing reasons, this Court denies the defendants' motion for summary judgment, or in the alternative, partial summary judgment. The Court also denies the Secretary's motion for partial summary judgment. Further, it is hereby ordered that this case is scheduled for a status conference on February 20, 1998 at 3:00 p.m., in Chambers, 3402 Key Tower, 127 Public Square, Cleveland, Ohio. The parties are ordered to file briefs within twenty days of the date of this order, summarizing the issues that remain for trial.

IT IS SO ORDERED.

### MEMORANDUM AND ORDER ON RECONSIDERATION

Alexis M. Herman, Secretary of the United States Department of Labor, moves this Court to partially reconsider its Memorandum and Order of January 9, 1998 denying the Secretary's motion for partial summary judgment.[2] The Secretary asserts that, given the factual findings made by this Court in its order, the Secretary is entitled to summary judgment as a matter of law on her claims under ERISA §§ 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D). Upon reconsideration, this Court agrees, and finds that the defendants did violate ERISA § 406.

### I.

■ "District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir.1991).

■ The major grounds justifying reconsideration of interlocutory orders are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Petition of U.S. Steel Corp.*, 479 F.2d 489, 494 (6th Cir.), *cert. denied, Fuhrman v. U.S. Steel Corp.*, 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973); 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790. In the present case, the Secretary argues that the Court erred by adding, in effect, a "causation" element to ERISA § 406 violations that is not supported by ERISA or existing case law.

### II.

As this Court explained in its Memorandum and Order of January 9, 1998, "[s]ection

---

**10.** The relevance and weight to be given to the fact that Cunningham valued Hall Chemical stock rather than Hall Holding stock is another point of contention between the parties.

**2.** The Secretary does not seek reconsideration of the portions of the Court's order denying the defendants' motion for summary judgment.

406 of ERJSA lists several transactions that are specifically prohibited and illegal per se because of their high potential for abuse .... the purchase of employer securities by a plan is a prohibited transaction under § 406 because of the high risk of self-dealing." *Reich v. Hall Holding Co.*, 990 F.Supp. 955 at 962 (1998).[3] The Court went on to explain, however, that § 408 of ERISA exempts an ESOP from the prohibited transaction rules if an ESOP's purchase of employer securities is made for "adequate consideration" as defined in § 3(18) of ERISA. *Id.* Section 3(18) defines "adequate consideration" in the case of assets for which there is no generally recognized market as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." 29 U.S.C. § 1002(18).

Adopting the standard first promulgated by the fifth circuit in *Donovan v. Cunningham*, 716 F.2d 1455 (5th Cir.1983), *cert. denied*, 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984), this Court held that the defendants could prove that adequate consideration was paid for the Hall Holding stock by showing that they "conducted a prudent investigation under the circumstances to determine the fair market value of the stock purchased by the ESOP." *Hall Holding*, 990 F.Supp. at 963. This standard incorporates the general fiduciary responsibility provisions of ERISA § 404. *Id.*

▮▮▮ This Court explicitly found that "the defendants, as the ESOP's fiduciaries, did not conduct a prudent and independent investigation to determine the fair market value" of the Hall Holding stock purchased by the Hall ESOP. *Id.* at *9. The Secretary argues in its motion for reconsideration that this finding alone warrants a holding that the defendants violated ERISA § 406. This

Court, however, held in its January 9th order that this finding alone was not sufficient to find that the defendants had violated § 406. *Id.* Rather, by relying on language in *Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir.1995), which analyzes ERISA § 404, this Court held that in order to prove a violation of § 406, the Secretary must establish a causal link between the defendants' failure to conduct a prudent investigation and harm suffered by the ESOP.[4] This causal link could be established by showing that "an objective, reasonable fiduciary would have concluded, after conducting a prudent investigation, that $3.5 million was too high a price to pay for 110 shares of Hall Holding stock." *Hall Holding*, 990 F.Supp. at 964. Therefore, under this Court's prior ruling, there can be no violation of § 406 if no harm or loss was suffered by the ESOP.

Upon reconsideration, the Court holds that it erred by applying *Kuper*, which requires a causal connection between a failure to properly investigate and a loss in order to establish a violation of § 404, to its analysis of whether the defendants engaged in a prohibited transaction in violation of ERISA § 406.[5]

As the Supreme Court explained in *Commissioner of Internal Revenue v. Keystone Consolidated Industries, Inc.*, 508 U.S. 152, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993),

> Before ERISA's enactment in 1974, the measure that governed a transaction between a pension plan and its sponsor was the customary arm's-length standard of conduct. This provided an open door for abuses such as the sponsors's sale of property to the plan at an inflated price or the sponsor's satisfaction of a funding obligation by contribution of property that was overvalued or nonliquid. Congress' re-

---

3. This Court fully discussed the facts of this case in its January 9th Memorandum and Order, and will not restate them here. *See Hall Holding*, 990 F.Supp. at 957–59.

4. This Court relied on the following language in *Kuper*:

> a fiduciary's failure to investigate an investment decision is not sufficient to show that the decision breached a fiduciary's duty to act reasonably in an effort to hold the fiduciary liable for a loss attributable to this investment

> decision, a plaintiff must show a causal link between the failure to investigate and the harm suffered by the plan ... In order to establish this causal link, a plaintiff must demonstrate that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident.

*Kuper*, 66 F.3d at 1459–60 (citations omitted).

5. The only causation element relevant under § 406 is whether the fiduciary defendants caused the plan to engage in a prohibited transaction, which is not an issue in dispute.

sponse to these abuses included the enactment of ERISA's § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A).... Congress' goal was to bar categorically a transaction that was likely to injure the pension plan.

*Id.* 508 U.S. at 160. Several other courts have recognized that the purpose of § 406 is to alleviate the danger of self-dealing in transactions between a plan and its sponsor. *See, e.g., Donovan,* 716 F.2d at 1464–1465 ("The object of Section 406 was to make illegal per se the types of transactions that experience had shown to entail a high potential for abuse."); *Marshall v. Kelly,* 465 F.Supp. 341, 354 (W.D.Okla.1978) ("Congress was concerned in ERISA to prevent transactions which offered a high potential for loss of plan assets or for insider abuse....").

In order to allow *appropriate* transactions between a plan and its sponsor, however, Congress enacted ERISA § 408, which carves out narrow exemptions from the prohibited transactions listed in § 406. Congress' goal of preventing insider abuse should not be undermined by the unnecessary expansion of the scope of these narrowly carved exemptions. By holding that a plaintiff, in order to establish a violation of § 406, must show a causal link between the fiduciary's failure to properly investigate an investment and loss to the plan, this Court would inappropriately expand the scope of the exemption set forth in § 408(e).

Further, the Secretary now brings to the Court's attention several cases in which courts have held that proof of harm or loss resulting from a prohibited transaction is not necessary to establish a violation under ERISA § 406. *Etter v. J. Pease Construction Co., Inc.,* 963 F.2d 1005, 1010 (7th Cir. 1992) (plan need not suffer some sort of injury for court to find that transaction is prohibited under § 406); *Raff v. Belstock,* 933 F.Supp. 909, 916 (N.D.Cal.1996) (whether § 406(b) has been violated "does not depend on whether any harm results from the transaction"); *McDougall v. Donovan,* 552 F.Supp. 1206, 1215 (N.D.Ill.1982) ("The per se nature of [§ 406(a)] prohibitions is emphasized by the fact that whether one of the provisions has been violated does not depend on whether any harm results from the transaction."). The defendants have not cited any contrary case law supporting their argument,

(and this Court's prior holding) that a violation of § 406 does not occur unless harm is caused to the plan as a result of the transaction. The defendants only cite *Kuper* which this Court now finds inapplicable because it dealt with the requirements of ERISA § 404, not § 406.

### III.

Accordingly, this Court grants the Secretary's motion for reconsideration, and finds that the defendants caused the Hall ESOP to engage in a prohibited transaction in violation of § 406 of ERISA, specifically 29 U.S.C. §§ 1106(a)(1)(A) and (D), by failing to conduct a prudent and independent investigation to determine the fair market value of the Hall Holding stock purchased by the Hall ESOP.

Although it may prove to be true that the defendants caused no monetary loss to the Hall ESOP, the issue of loss goes to the appropriate remedy, not to whether a violation of § 406 has occurred. The Court will determine the appropriate remedy for the defendants' violation of §§ 406(a)(1)(A) and (D) at trial.

IT IS SO ORDERED.